Hancock et al. v. Yaden.

No. 15,037.

## HANCOCK ET AL. v. YADEN.

CONSTITUTIONAL LAW.— Wages.— Money Payments.— Waiver of by Antecedent Contract.— Violation of Statute.---In an action by the plaintiff for the val ue of services rendered in the coal mine of the defendants, the answer admitting the employment and services rendered, averred their performance under a contract antecedent to the employment, whereby the plaintiff expressly waived his right to demand and receive his wages and pay for mining coal, every two weeks, in lawful money of the United States, as provided by statute, and also averred a sale and delivery to the plaintiff in accordance with the waiver, of goods, wares, and merchandise in payment of his demand.

Held, that the contract is void in so far as it assumes to waive, by an antecedent agreement, the right to receive wages in lawful money of the United States, being in violation of the statute, sections 1599 and 1610, Elliott's Supplement.

Held, also, that the answer is a plea of payment, and is bad, as it does not state facts in bar of the action.

SAME.— Lawful Money.— Protection of.---Statute.---Constitutionality.— The statute in question is constitutional. The Legislature has such authority over the right to contract as to prohibit contracts from being made in advance waiving the right to payment in the lawful medium of payment. This it may do in order to protect and maintain the lawful money of the Nation.

PLEADING.— Plea of Accord and Satisfaction.— Must aver Delivery and Acceptance.— A plea of accord and satisfaction is bad which fails to aver a delivery and acceptance of the goods in satisfaction of the debt.

From the Sullivan Circuit Court.

*J. T. Beasley, A. B. Williams* and *G. A. Knight,* for appellants.

*E. S. Holliday* and *G. A. Byrd,* for appellee.

ELLIOTT, J.—It is alleged in the complaint that the appellee was employed by the appellants to render service for them as a miner in a coal mine of which they were the owners; that, under this employment, he did render service for them in mining coal; that his services were reasonably worth

five dollars per day; that he demanded payment for his services in lawful money of the United States, and that payment was refused. The appellants answered the complaint in two paragraphs, but, as the only difference between the paragraphs is that one pleads a verbal contract and the other a written one, it is only necessary to give a summary of one, as the questions which arise are substantially the same as to both of the paragraphs. The answer admits the employment, and admits, also, the allegation that the appellee rendered the services for which he sues, but it sets forth a written contract, alleges that the services were performed under the contract and avers that the appellants sold and delivered to the plaintiff in payment of his claim and to the full amount of the wages earned by him divers articles of goods, wares and merchandise. The provisions of the contract, in so far as they are material to the questions argued, are these : " The said William P. Yaden further agrees to accept his pay, or any part thereof, at the option of said Hancock and Conkle, in goods and merchandise at their store, near their said coal mine, and the said William P. Yaden hereby expressly waives his right to demand and receive his wages and pay for mining coal every two weeks in lawful money of the United States, as now provided by law he shall be paid." The court sustained a demurrer to the answer, the appellants stood by their answer and judgment was rendered against them.

To clear the case from embarrassments and make the way plain to a consideration of the controlling question, we preface our discussion by remarking that the answer is not a plea of accord and satisfaction, nor a plea of set-off, but a plea of payment, and the ultimate conclusion to be reached depends upon the answer to the question whether it is sufficient as such a plea. That it is not a plea of accord and satisfaction is clear, but, if it were to be so regarded, it would be bad because it does not aver a delivery and an acceptance of the goods in satisfaction of the debt. Another prefatory

matter deserves passing thought, and that is this: The plea is a plea of payment, founded on a contract made before the performance of the services and professing to bar the action, if, therefore, the plea does not state facts in bar of the action it is bad. Whether it does state facts in bar of the action depends upon the validity of the antecedent contract which is the principal support of the plea, and as that contract is indivisible, if part is illegal, the whole must fall. The sufficiency of the answer must, it is clear, depend entirely upon the validity of the contract on which it is founded, since if that contract is invalid there is no agreement to accept payment in goods or merchandise, and where there is no such agreement payment can not be made in property. Another thing may be added by way of preface, and that is this: We are not here concerned with the question of what parties may do after services have been performed, for here the question is, what contract may they make before the relation of employer and employee begins?

It is sufficiently evident from what we have said that the only question which we can properly consider or decide is, whether the antecedent contract was valid in so far as it assumes to waive the right of the appellee to be paid his wages in lawful money of the United States, and to this question we confine our discussion and give judgment upon it and no other. Our judgment is that the antecedent contract is entirely void in so far as it assumes to waive the appellee's right to receive his wages in money. If there were no valid statute prohibiting such a contract it would be competent for the parties to make it, so that the ultimate judgment of the court hinges upon the question whether there is a valid statute prohibiting such contracts. There is a statute which, in terms, prohibits such contracts, and if it does not violate some provision of the Constitution it totally destroys the contract upon which the defence is founded. Elliott's Supp., sections 1599, 1610. Our judgment is, that the provision of the statute forbidding the execution of contracts waiving

a right to payment in money, is one that the Legislature had power to enact.

It is a fundamental principle that every member of society surrenders something of his absolute and natural rights in all organized States. Without some yielding of absolute rights, civil government would be impossible. " But every man," says Blackstone, " when he enters into society gives up a part of his natural liberty." " Property and law," as Bentham says, " are born and must die together." The right to dispose of property or labor is a right not wholly surrendered by the citizen, nor yet entirely beyond control by the Legislature of the State. The right to contract is an incident of this *jus disponendi.* But the right to contract is not, and never has been, in any country where, as in ours, the common law prevails and constitutes the source of all civil law, entirely beyond legislative control. The statute of frauds enables contracting parties to avoid contracts not in writing. The law declares that payment in part of an ascertained debt shall not extinguish it, although the parties agree that it shall do so. *Ogborn* v. *Hoffman,* 52 Ind. 439 ; *Smith* v. *Tyler,* 51 Ind. 512 ; *Markel* v. *Spitler,* 28 Ind. 488. A party will not be allowed to contract to waive the benefit of homestead or exemption laws. *Maloney* v. *Newton,* 85 Ind. 565 ; *Kneettle* v. *Newcomb,* 22 N. Y. 249 ; *Curtis* v. *O'Brien,* 20 Iowa, 376 ; *Moxley* v. *Ragan,* 10 Bush, 156 (19 Am. Rep. 61). A debtor can not waive stay of execution by contract. *McLane* v. *Elmer,* 4 Ind. 239 ; *Develin* v. *Wood,* 2 Ind. 102. By the English law a seaman can not, by contract, waive his right to wages. Kay Shipmaster and Seamen, 626. Parties can not, by contract, bind themselves in advance not to resort to the courts for the redress of wrongs. *Bauer* v. *Samson Lodge,* 102 Ind. 262 ; *Dugan* v. *Thomas,* 79 Me. 221. A contract providing that a party shall not remove a cause to the federal court is void. *Insurance Co.* v. *Morse,* 20 Wall. 445; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535.

A party will not be allowed to contract without limitation that he will not engage in a particular business. *Taylor* v. *Saurman,* 110 Pa. St. 3. A statute may require parties to insert in a promissory note the words, " given for a patent." *Herdic* v. *Roessler,* 109 N. Y. 127 ; *New* v. *Walker,* 108 Ind. 365. Priority in the allowance and payment of claims may be regulated by legislation. *United States* v. *Fisher,* 2 Cranch, 358. A lien for miner's wages may be made superior to the royalty due to the owners of mine from the lessees or operators. *Warren* v. *Sohn,* 112 Ind. 213. Much beyond the doctrine declared in the cases to which we have referred is the ruling in *Churchman* v. *Martin,* 54 Ind. 380, wherein it was held that a statute prohibiting parties from contracting to pay attorney's fees is constitutional. The truth is, that without law as one of its factors, there is really no such thing as a contract. The law is a silent, but a ruling, factor in every contract. *Long* v. *Straus,* 107 Ind. 94; *Hudson Canal Co.* v. *Pennsylvania Co.,* 8 Wall. 276, *vide* p. 288. The case before us affords an example, for where a man, upon request, performs services for another, the law implies that he shall be paid for them and paid in money. It needs no positive agreement to pay in money to entitle a creditor to demand money, for the law decrees that the payment shall be in money. The statutory provision under discussion does no more than enforce this legal right by commanding that men shall not make a contract dispensing with the lawful mode and medium of payment.

The authorities to which we have referred, and to which it would be no great task to add others, prove that the law-making power of the State does have authority over the right to contract. That this legislative authority is limited no one doubts ; but it is limited only by the Constitution. In that instrument are found the only limitations upon the law-making power of the State. *Hedderich* v. *State,* 101 Ind. 564; *McComas* v. *Krug,* 81 Ind. 327; *Beauchamp* v. *State,* 6 Blackf. 299. But no limitation in that instrument

Hancock *et al. v.* Yaden.

so operates as to prevent the law-making power from prohibiting classes of citizens from contracting in advance that the wages of miners shall not be paid in lawful money of the United States. It would be not only unnecessary but improper to enter upon the work of ascertaining to what extent the Constitution restrains the Legislature from regulating or restricting the right to contract; for all that can with propriety be here decided is, that it does not restrain the Legislature from enacting laws which operate to maintain or protect the medium of payment established by the sovereign power of the nation.

It can not be denied, without repudiating all authority, that the Legislature does possess some power over the right to contract, and if it does, then nothing can be clearer than that this power extends far enough to uphold a statute providing that payment of wages shall be made in money, where there is no agreement to the contrary made after the services have been rendered. Whether the Legislature may absolutely declare that nothing shall be payment but money, we need not inquire; for all that is important here is to decide that it may prohibit a contract from being made in advance, waiving the right to payment in what the law says shall be the medium of payment.

We can not conceive a case in which the assertion of the legislative power to regulate contracts has a sounder foundation than it has in this instance; for here the regulation consists in prohibiting men from contracting in advance to accept payment in something other than the lawful money of the country for the wages they may earn in the future. It is of the deepest and gravest importance to the government that it should unyieldingly maintain the right to protect the money which it makes the standard of value throughout the country. The surrender of this right might put in peril the existence of the nation itself. Suppose that in the years of the war, when gold was worth such an extraordinary premium, the owners of supplies required by the government had, by

Hancock *et al. v.* Yaden.

concerted action, refused to accept anything in payment but coin, would the nation have been powerless to protect what it had decreed should be money? Or, again, suppose that the persons holding the needed supplies had refused to take anything but property in exchange, and that it was impossible to procure the species of property demanded, would the government have been helplessly at their mercy? The protection from such evils is in the right to establish and maintain, by coercive measures if need be, what by the law is made money of the nation. We do not use these illustrations for more than their worth; we employ them simply to show the imperious necessity that exists for the retention, in its unbroken integrity, of the power to establish and maintain a standard of value. What is necessary to national or State life the government possesses, and it is for the Legislature to judge what measures are essential to the complete and effective exercise of a power which it possesses.

It is not simply the government, as a government, that is interested in the power to establish and maintain a standard of value; for to every citizen engaged in any business of life it is of vital importance that there should be a fixed and unchanging standard. Without it, business, except of the most meagre kind, would be at an end, and commerce would be practically annihilated.

The decisions of the highest tribunal of the country go very far to sustain our conclusions. It is the law, as that court has declared it in able opinions, that the government has a right to provide a currency for the whole country, and to drive out all other circulating mediums by taxation or otherwise. *Veazie Bank* v. *Fenno,* 8 Wall. 533. This was asserted by Chief Justice Chase, speaking for the majority of the court, although he and the majority of the court, as it was then constituted, did not go so far upon other phases of the case as the court did go in the subsequent case which now stands as declarative of the law of the land. *Legal Tender*

*Cases,* 12 Wall. 457. In *Hepburn* v. *Griswold,* 8 Wall. 603, a different view was taken upon some phases of the general question from that declared in the *Legal Tender Cases, supra,* but not upon the proposition we have stated. The power to establish necessarily implies the power to maintain. *United States* v. *Fisher, supra; McCulloch* v. *Maryland,* 4 Wheat. 316 ; *United States* v. *Marigold,* 9 How. 560. It is for the Legislature to judge what means are necessary and appropriate to accomplish an end which the Constitution makes legitimate. It is, therefore, competent for the legis- lative branch of the government to devise and establish such rules as in its judgment will best protect the standard of value which its laws have fixed. The rule to which we have referred is a familiar one, but it has been so admirably stated by Mr. Justice Bradley that we may be pardoned for quoting his language. Replying to an objection pressed by counsel, he said : " The answer is, the legislative depart- ment, being the nation itself, speaking by its representatives, has a choice of methods, and is master of its own discretion." *Legal Tender Cases, supra, vide* p. 561.

The power exercised by the legislative department in fix- ing the standard of value closely resembles that by which the standard of weights and measures is established and maintained. In truth, there is no difference in the inherent nature of the powers ; the difference is in the subject-matter to which they are applied rather than in the powers them- selves. The power of the State extends so far as to enable it to declare and enforce penalties against persons who vio- late the law regulating the standard of weights and meas- ures or the standard of values. It is upon the theory that matters connected with the regulation of the standard of values are within the legislative power that statutes defining and punishing usury are sustained. It is true, we know, that the Federal Congress is the proper authority to regu- late the standard of values, but it does not follow from this

that a State may not do what it can to prevent the debasement of the standard fixed by Congress. It can, of course, neither lower that standard nor pass laws hostile to those enacted by Congress, but it may support the efforts of the national legislature as far, at least, as it is within the power of a State to do so. The principle which rules this phase of the subject is closely analogous to that established by the decisions affirming the right of the State to proscribe as a felon one who counterfeits the national money. *Dashing* v. *State,* 78 Ind. 357; *Snoddy* v. *Howard,* 51 Ind. 411; *Chess* v. *State,* 1 Blackf. 198; *Fox* v. *State,* 5 How. 410; *United States* v. *Field,* 16 Fed. Rep. 778

The provision of the statute to which our decision is directed, operates upon all members of the classes it enumerates. It neither confers special privileges nor makes unjust discrimination. All who are members of the classes named are entitled to its benefits or subjected to its burdens. It is open to every citizen to become a member of any of the classes designated, and the privileges conferred belong on equal terms to all. *Johns* v. *State,* 78 Ind. 332; *McAunich* v. *Mississippi, etc., R. R. Co.,* 20 Iowa, 338. It denies no privilege to any one, for it leaves it free to every citizen to become a member of the classes specified, and it operates alike upon all who enter those classes.

The statute operates upon both the employer and the employee. It may, it is true, in its practical operation especially benefit the wage-earner, but that is no fault; at all events, the fault is not such a grievous one as to compel the courts to strike it down. It fixes no price upon any man's labor; it leaves the parties to do that, but it does require them to refrain from contracting before the relation of employer and employee begins for payment in anything except the lawful money of the United States. It does not preclude parties from making an accord and satisfaction after wages have been earned and services rendered, although it does com-

mand that the antecedent contract shall not provide that payment may be made in something other than lawful money of the nation.

