[Sac. No. 558.   Department One.—November 20, 1899.]

## ANDREW JOHNSON, Respondent, v. GOODYEAR MINING COMPANY et al., Appellants.

CORPORATIONS—ACT OF 1897—LIENS OF LABORERS—CONSTITUTIONAL LAW.—The act of March 29, 1897, regulating the contracts of corporations doing business in this state respecting the wages of their employees, and establishing liens upon all of the property of the corporation therefor, is special, discriminating, and arbitrary legislation against corporations doing business in this state, and in favor of laborers performing labor therefor, infringes the rights of persons to make and enforce their contracts. and denies to such corporations the equal protection of the laws, and is unconstitutional and void.

ID.—"CORPORATION" INCLUSIVE OF INDIVIDUALS—"PERSON"—CONSTRUCTION OF FOURTEENTH AMENDMENT.—The word "corporation" in the act of 1897 means an artificial person created and existing under the laws of the place of its creation; but, as applied to its rights as a defendant, is to be treated as including all of the individuals who are members thereof. It is to be deemed a "person" within the meaning of the fourteenth amendment to the constitution of the United States, which forbids a state to "deny to any person within its jurisdiction the equal protection of the laws."

ID.—BASIS OF CLASSIFICATION—ARBITRARY SELECTION OF CORPORATIONS.— Corporations cannot be made the basis of classification for purposes of legislation, unless such classification is founded upon some constitutional or natural distinction, which suggests a reason to justify the diversity of legislation respecting them. There is no reason to justify the arbitrary selection of corporations doing business in this state in order to subject their property to a lien not enforceable against other persons under like circumstances, and to prohibit them from making defenses which other persons may make, and requiring them to pay attorney's fees in an action at law from which other persons are exempt. and forbidding them and their employees to make contracts which other persons may make; and such arbitrary selection cannot be justified by calling it classification.

ID.—POWER TO AMEND CHARTERS—PROTECTION OF CORPORATIONS.—The power of the legislature to amend or repeal the charters of corporations organized in California does not authorize the legislature. while the corporation exists, to deprive it of the rights, guaranteed to it by the federal constitution, to due process of law and to the equal protection of the laws. nor has the legislature any power to alter, amend, or repeal the charters of foreign corporations doing business in this state.

APPEAL from a judgment of the Superior Court of Sierra County.   Stanley A. Smith, Judge.

The facts are stated in the opinion.

Frank R. Wehe, for Appellants.

F. D. Soward, for Respondent.

COOPER, C.—This action was brought to recover from the corporation defendant for labor performed by plaintiff and for labor performed by others for defendant corporation, whose claims have been assigned to plaintiff. Judgment was entered in favor of plaintiff, and defendants appeal. The case comes here on the judgment-roll. The findings show that the defendant corporation, while engaged in business in Sierra county, California, became indebted to plaintiff and some twenty others, who before the commencement of this action assigned their claims to plaintiff, for labor performed by the month at the instance of defendant corporation in its quartz mine in said county, and the same has not been paid. That four hundred dollars is a reasonable attorney's fee to be allowed to plaintiff for the prosecution of the action. As conclusions of law, the court found that plaintiff was entitled to judgment against defendant corporation for the sum of five thousand and thirty-nine dollars and fifty-seven cents and for four hundred dollars attorney's fees, and that the same is a first lien upon all the property described in the complaint, consisting of certain real estate, mining claims, and personal property, consisting of mining materials, tools, engines, cars, wood, lumber, merchandise for mining, etc., and that all the said property, or so much thereof as might be necessary, be sold to pay the plaintiff's judgment, costs, and attorney's fees. Judgment was accordingly entered. The action was brought to recover monthly wages and attorney's fees, and to have the amount declared a lien upon the property of the defendant corporation under an act approved March 29, 1897. (Stats. 1897, p. 231.)  As the constitutionality of the act is the main question in controversy here, it will be necessary to give the sections of the act herein discussed in full. The sections material are as follows:

"Section 1.   Every corporation doing business in this state

shall pay, at least once a month, each and every employee employed by such corporation, in transacting or carrying on its business, or in the performance of labor for it, the wages earned by such employee during the preceding month; provided, however, that if at the time of payment any employee shall be absent, or not engaged in his usual employment, he shall be entitled to said payment at any time thereafter upon demand.

"Sec. 2.   A violation of any of the provisions of section 1 of this act shall entitle each of the said employees to a lien on all the property of said corporation for the amount of their wages, which lien shall take preference over all other liens, except duly recorded mortgages or deeds of trust; and in any action to recover the amount of such wages, or to enforce said lien, the plaintiff shall be entitled to a reasonable attorney's fee, to be fixed by the court, and which shall form part of the judgment in said action, and shall also be entitled to an attachment against said property.   An unrecorded deed shall be no defense to such actions.

"Sec. 3.   That on the trial of any action against such corporation for a violation of the provisions of this act, such corporation shall not be allowed to set up any defense for a failure to pay monthly any employee engaged in transacting or carrying on its business the wages earned by such employee during the preceding month, other than the fact that such wages were not earned, except a valid assignment of such wages, a setoff or counterclaim against the same, or the absence of such employee from his usual employment at the time of the payment of the wages so earned by him. . . . .

"Sec. 5.   No corporation shall require, and no employee of such corporation shall make, any agreement to accept wages at longer periods than as provided in this act as a condition of employment.

"Sec. 6.   All wages earned by any employee engaged in the service of any corporation in this state shall be paid in lawful moneys of the United States, or in checks negotiable at face value on demand.

"Sec. 7.   Any corporation violating any of the provisions of this act shall be subject to a fine not exceeding one hundred dollars, or less than fifty dollars, for each violation, the same

to be imposed by any court in this state having jurisdiction of offenses in which the penalty does not exceed a fine of one hundred dollars; said fine to be paid, by the judge or magistrate before whom a recovery may be had under the provisions of this act, into the general fund of the treasury of the county in which said conviction may be had."

The plaintiff claims the benefit of the provisions of said act applicable to this case, and the defendants contest the said provisions and every part of said act as being unconstitutional. The statute is said to contravene the following provisions of the constitution of the state: 1. "No person shall be deprived of life, liberty, or property without due process of law" (Const., art. I, sec. 1, subd. 13); 2. "Nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens" (Const., art. I, sec. 1, subd. 21); 3. "All laws of a general nature shall have a uniform operation" (Const., art. I, sec. 1, subd. 11); 4. Section 25, article IV, providing that the legislature shall not pass local or special laws in the following cases: "3. Regulating the practice of courts of justice; . . . . 24. Authorizing the creation, extension, or impairing of liens; . . . . 33. In all other cases where a general law can be made applicable"; 5. Fourteenth amendment to the constitution of the United States: "Nor shall any state deny to any person within its jurisdiction the equal protection of the laws." In the decision of this case the constitutionality of the sections of the statute herein set forth is necessarily involved, and it is with a deep sense of the importance of the subject that we enter upon its discussion. We must determine whether the law-making power of the state has in this instance gone beyond the limits of the constitution adopted by the people. This is always a question of great delicacy and one which this court approaches with reluctance, but one in which the duty of the court is plain and which must be met squarely when presented. The same constitution that lays down the fundamental law of our state and prohibits legislatures from going outside the powers and limitations therein contained created the courts, and provided that they should stand as the guardians of the people and lay their restraining hands upon the legislature in all cases where it has plainly violated the provisions of the people's charter of rights.

It will be observed that the act in question applies only to two classes of persons: 1. Corporations doing business in this state, and not to corporations of any other class; 2. To laborers performing labor for such corporations. It does not apply to the thousands of laborers who may be employed by individuals or copartnerships in the many and varied industries of the state. The word "corporation" in the act means those artificial persons created and existing under the laws of this or some other state; but the word "corporation," as to the rights of defendants, must be treated as though it means the name of all the individuals who are members of the corporation. It has long been settled that the word "person," within the meaning of the fourteenth amendment to the constitution of the United States, applies to a corporation. (*Douglass v. Pacific etc. S. S. Co.,* 4 Cal. 306; *Pasadena v. Stimson,* 91 Cal. 248; *Santa Clara County v. Southern Pac. R. R.,* 118 U. S. 394; *Pembina Min. Co. v. Pennsylvania,* 125 U. S. 181, 189; *Missouri Pac. Ry. v. Mackey,* 127 U. S. 205; *Gulf etc. Ry. Co. v. Ellis,* 165 U. S. 154.)

The rule is admirably stated in the Railway Tax Cases, 13 Fed. Rep. 743, as follows: "Private corporations are, it is true, artificial persons, but, with the exception of a sole corporation, with which we are not concerned, they consist of aggregations of individuals united for some legitimate business. In this state, they are formed under general laws, and the Civil Code provides that they 'may be formed for any purpose for which individuals may lawfully associate themselves.' Any five or more persons may, by voluntary association, form themselves into a corporation. And, as a matter of fact, nearly all enterprises in this state requiring for their execution an expenditure of large capital are undertaken by corporations. It would be a most singular result if a constitutional provision intended for the protection of every person against partial and discriminating legislation by the states should cease to exert such protection the moment the person becomes a member of a corporation. We cannot accept such a conclusion. On the contrary, we think it is well established by numerous adjudications of the supreme courts of the several states that whenever a provision of the constitution or of a law guarantees to persons the enjoyment of

property, or affords to them means for its protection, or prohibits legislation injuriously affecting it, the benefits of the provision extend to corporations, and that the courts will always look beyond the name of the artificial being to the individuals whom it represents."

The case was afterward taken to the supreme court of the United States (Railway Tax Cases, 118 U. S. 396), and on the opening of court, before argument, the chief justice said: "The court does not wish to hear argument on the question whether the provision in the fourteenth amendment to the constitution which forbids a state to deny to any person within its jurisdiction the equal protection of the laws applies to these corporations. We are all of opinion that it does." In discussing the provisions of the statute in question it will, therefore, be regarded as settled that the word "corporation" refers to the members who constitute the corporation, and that the rights of a corporation are to be measured by the same laws as the rights of a person. The law should be made for all alike, for the rich as well as the poor, for the corporation as well as the laborer. In Cooley on Constitutional Limitations, sixth edition, page 483, it is said: "But everyone has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. Those who make the laws are to govern by promulgated established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plough. This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments." In *Wally v. Kennedy*, 2 Yerg. 554, 24 Am. Dec. 511, it is said: "The rights of every individual must stand or fall by the same rule or law that governs every other member of the body politic, or land, under similar circumstances; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals and

corporations would be governed by one law, the mass of the community and those who made the law by another, whereas the like general law affecting the whole community equally could not have been passed." Applying these principles to this act, it is clearly unconstitutional. It gives a first lien to laborers for the amount due them from corporations doing business in this state upon all the real and personal property of such corporations, and does not even require any description of the property or notice in any manner in order to make such lien valid. It seems to give the laborer the right to an attachment against the property of the corporation without requiring him to make the affidavit and file the undertaking required of all other persons in order to procure such attachment. It does not give this lien to any other class of laborers. The thousands of laborers for individuals or copartnerships in the like employment do not have the benefit of it. The laborer toiling at the same kind of labor, felling the forest, tilling the soil, or digging in the bowels of the earth, has no such lien if he is not working for a corporation doing business in this state. The lien attaches to the property of such corporation, but not to the property of an individual under precisely the same circumstances. Under general law, liens are given to all mechanics, artisans, laborers, or materialmen, and against all persons and corporations. Under the present statute, a lien is given to laborers performing labor for the particular corporations named. All other persons in the state, after obtaining an ordinary money judgment, must enforce it by the writ of execution, but laborers for such corporations under this statute have the right to have the court declare the amount found due them a lien on all the property of the corporation, which shall take preference over all other liens except recorded mortgages and deeds of trust. The grocer who, perhaps, has furnished the corporation the food with which the laborer has fed his wife and children may have attached the property of the corporation for the purpose of securing himself, but the laborer's lien by the mighty hand of this statute at once sweeps it away. The materialman or contractor who has furnished the material for or constructed a building for the corporation, and who has filed his notice of lien as provided in the Code of Civil Procedure, and who may have secured a judgment

thereon, must stand by and see his lien destroyed by a decree of court in favor of laborers who performed labor for the corporation since his lien attached. The judgment creditor who has procured a judgment and had it regularly docketed, and who is resting securely under the provisions of the Code of Civil Procedure of this state making his judgment a lien upon all the real estate of the judgment debtor, is surprised to find his lien destroyed by a decree in favor of one who has performed labor for the corporation long since his lien attached. The corporation may have delivered a large amount of personal property by way of pledge to secure a loan, and the money may have been used in paying the laborers employed by the corporation, and yet, under this statute, the court must declare the amount due laborers a prior lien as against the pledgee who has actual possession of the property pledged. The statute gives the laborer a right, in case he recovers judgment, to recover attorneys' fees, which become a part of the judgment. No other class of laborers or persons are given the right to recover attorneys' fees except by virtue of a contract or by virtue of a general statute. The corporation is prohibited from setting up any defense to the action except some two or three. Matters which might be pleaded as a defense by all other persons in the state are not allowed to be so pleaded by the corporation. If the legislature could deprive the corporation of some of the defenses which other litigants on like terms are allowed, it could, by a Draconian edict, deprive it of all of them and say at once that the corporation should make no defense whatever to the action. The corporation and the laborer are prohibited from making any contract whereby wages are to become due for a longer period than one month as a condition of employment, or by which the laborer is to be paid in anything except money or negotiable checks. The working man of intelligence is treated as an imbecile. Being over twenty-one years of age, and not a lunatic or insane, he is deprived of the right to make a contract as to the time when his wages shall become due. Being of sound mind and knowing the value of a horse, he is not allowed to make an agreement with the corporation that he will work sixty days and take the horse in payment. Business might be such that a corporation could not possibly pay wages without

getting laborers who were willing to wait for their wages until the corporation could get money with which to pay them by marketing its products. The laborer might be interested in the corporation, or for some reason willing to wait until the corporation could pay him. Yet the parties, being able to contract and willing to contract, and desiring for the good of each other to contract, are by this statute forbidden to do so. Not only this, but the corporation shall be subject to a fine of not less than fifty dollars for each violation of the statute. A corporation employing a thousand men and sued by each could not defend the suits without being limited in its defenses to those named in the statute, and being subject to a reasonable attorney's fee in each case. In case it made a contract with the thousand men by which they agreed to work for it three months for one hundred dollars each, they could bring suit and recover before the end of the three months and each recover an attorney's fee, making a thousand attorney's fees, and the corporation would be subject to one thousand fines of one hundred dollars each, making the modest sum of one hundred thousand dollars in fines, or perhaps the magistrate might in his discretion make the fine fifty dollars in each case and thus reduce it to fifty thousand dollars. We might enumerate many other infirmities in the statute, but the above are sufficient to destroy it. It is probably unnecessary in this opinion to discuss separately the constitutional objections herein briefly pointed out. In *Ex parte Kuback,* 85 Cal. 275, 20 Am. St. Rep. 226, it appeared that the petitioner had been arrested for the violation of an ordinance of the city of Los Angeles making it a misdemeanor for any contractor to make any agreement to pay any laborer for any labor in excess of eight hours in any one day. This court, in discharging the petitioner, said: "It is claimed in support of the petition that this ordinance was unconstitutional and void. We think this objection is well taken. It is simply an attempt to prevent certain parties from employing others in a lawful business and paying them for their services, and is a direct infringement of the right of such persons to make and enforce their contracts. If the services to be performed were unlawful or against public policy, or the employment were such as might be unfit for certain persons, as, for example, females

or infants, the ordinance might be upheld as a sanitary or police regulation, but we cannot conceive of any theory upon which a city could be justified in making it a misdemeanor for one of its citizens to contract with another for services to be rendered because the contract is that he shall work more than a limited number of hours per day." Statutes similar to the one under discussion have been frequently passed by the legislatures of sister states and as frequently declared unconstitutional by the courts. The legislature of Pennsylvania, in June, 1881, passed what was known as the "store order act," and under its provisions all laborers employed by firms, corporations, or persons engaged in the business of manufacturing must be paid in cash and can make no agreement by which their labor shall be paid for in any goods or store orders.

The supreme court of the state in *Godcharles v. Wigeman*, 113 Pa. St. 437, held the act unconstitutional and in the opinion said: "The first, second, third, and fourth sections of the act of June 29, 1881, are utterly unconstitutional and void, inasmuch as by them an attempt has been made by the legislature to do what in this country cannot be done; that is, to prevent persons who are *sui juris* from making their own contracts. The act is an infringement alike of the right of the employer and the employee; more than that, it is an insulting attempt to put the laborer under a legislative tutelage which is not only degrading to his manhood but subversive of his rights as a citizen of the United States. He may sell his labor for what he thinks best, whether money or goods, just as his employer may sell his iron or coal, and any and every law that proposes to prevent him from so doing is an infringement of his constitutional privileges and consequently vicious and void."

In 1887, the legislature of the state of West Virginia passed an act declaring that all persons engaged in mining coal or other minerals, or in manufacturing them, should not issue for the payment of labor certain orders therein described. The supreme court of the state in *State v. Goodwill*, 33 W. Va. 179, 45 Am. St. Rep. 863, declared the law unconstitutional and in the opinion said: "The property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of the

poor man lies in the strength and dexterity of his own hands; and to hinder him from employing these in what manner he may think proper, without injury to his neighbor, is a plain violation of this most sacred property. It is equally an encroachment both upon the just liberty and rights of the workman and his employer, or those who might be disposed to employ him, for the legislature to interfere with the freedom of contract between them, as such interference hinders the one from working at what he thinks proper, and at the same time prevents the other from employing whom he chooses. . . . . But we are aware of no well-considered case in which a statute has been upheld that undertook to regulate the dealings between employer and employee, even in this class of occupations; much less in cases that are not impressed with a public trust or duty." This case was immediately followed by *State v. Fire Creek etc. Co.*, 33 W. Va. 188; 25 Am. St. Rep. 891, in which, on the same reasoning, a statute of the state making it unlawful for any person, firm, or corporation engaged in mining or manufacturing to sell goods to any employee at a greater per cent profit than like goods are sold to others was held unconstitutional. In the opinion it is said: "That it is an attempt to do for private citizens, under no physical or mental disabilities, what they can best do for themselves, is apparent. It selects miners and manufacturers as a class, and denies to them privileges which are not only proper and legitimate in themselves, but also to some extent necessary and unavoidable in the conduct of business; privileges which concern private affairs solely, and which are enjoyed by all other classes of citizens." The general assembly of Massachusetts passed an act providing that no employer should impose a fine upon or withhold the wages of an employee engaged in weaving, for imperfections that may arise during the process of weaving. This act was pronounced unconstitutional in an able opinion of the supreme court of the state. (*Commonwealth v. Perry*, 155 Mass. 117; 31 Am. St. Rep. 533.)

The Revised Statutes of Missouri in 1889 made it unlawful for any corporation, firm, or person engaged in mining to issue in payment of wages any order or check payable otherwise than in money unless the same was negotiable or redeemable at its face value in cash or goods at the option of the holder. The su-

preme court of the state, in *State v. Loomis*, 115 Mo. 307, held the statute unconstitutional. The legislature of the state of Illinois in 1883 passed a statute requiring that owners and operators of coal mines in the state should weigh the coal at the mines, and that all contracts with laborers by which the weighing of coal at the mines shall be dispensed with shall be void. The statute was held unconstitutional in *Millett v. People*, 117 Ill. 295; 57 Am. Rep. 869. The same rule has been followed by the same court in regard to similar statutes as to "truck stores" (*Frorer v. People*, 141 Ill. 171); as to an act for the weekly payment of wages by corporations. (*Braceville Coal Co. v. People*, 147 Ill. 66; 37 Am. St. Rep. 206.)

The legislature of Texas provided by statute that a railroad company refusing to pay an employee within fifteen days after demand shall be liable to such employee in a sum equal to twenty per cent on the amount due. The statute was held unconstitutional. (*San Antonio etc. Ry. Co. v. Wilson* (Tex. App., June 15, 1892), 19 S. W. Rep. 910.) In the opinion it is said: "If the legislature desires to interfere at all in the enforcement of labor claims, it must do so by laws equal in their operation, and protecting alike the interest of the employer and employee, for the law knows no favorites."

The supreme court of Nebraska, in *Atchison etc. R. R. Co. v. Baty*, 6 Neb. 37, 29 Am. Rep. 356, held unconstitutional a statute of 1867 giving to owners of livestock double the value of such property injured or destroyed on a railroad track.

In Michigan, a statute was passed in 1885 authorizing the taxing of an attorney's fee of twenty-five dollars in actions against a railroad company for damages for cattle killed, and the supreme court of the state held it unconstitutional. (*Wilder v. Chicago etc. Ry. Co.*, 70 Mich. 382.) And the supreme court of Arkansas held a similar statute of that state unconstitutional (*St. Louis etc. Ry. v. Williams*, 49 Ark. 492); and the same ruling was made on a similar statute by the supreme court of the state of Washington (*Joliffe v. Brown*, 14 Wash. 155; 53 Am. St. Rep. 868); and by the supreme court of Ohio (*Coal Co. v. Rosser*, 53 Ohio, 12-24; 53 Am. St. Rep. 622). Cases almost without number could be cited to the same general effect. Among others, see *Durkee v. Janesville*, 28 Wis. 464; 9 Am. Rep. 500; *Grand*

*Rapids Chair Co. v. Runnells,* 77 Mich. 104; *South & North Alabama R. R. Co. v. Morris,* 65 Ala. 193; *Chicago etc. R. R. Co. v. Moss,* 60 Miss. 641-52; *Denver etc. Ry. Co. v. Outcalt,* 2 Colo. App. 395.

This court in Bank held that a statute of the state prohibiting bakers from following their vocation between the hours of 6 o'clock P. M. on Saturdays and 6 o'clock P. M. on Sundays was a special law and void. (*Ex parte Westerfield,* 55 Cal. 551; 36 Am. Rep. 47.) And the same was held as to a similar statute in relation to barbers. (*Ex parte Jentzsch,* 112 Cal. 469.)

The question is very ably considered and would seem to be finally put to rest by the supreme court of the United States in *Gulf etc. Ry. Co. v. Ellis,* 165 U. S. 150. The statute of the state of Texas allowing owners of stock killed by a railway corporation ten dollars attorney's fees as additional costs was held unconstitutional. In the opinion it is said: "The act singles out a certain class of debtors and punishes them, when for like delinquencies it punishes no others. They are not treated as other debtors or equally with other debtors. They cannot appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fees of the successful plaintiff; if it terminates in their favor, they recover no attorney's fees. . . . . They do not stand equal before the law. They do not receive its equal protection." The reasoning of the highest court in the land in the case cited applies to this case. There is no reason why a different rule as to defenses that may be pleaded and proven and as to the nature of the lien of a judgment should obtain against a corporation than that which applies to other litigants. In *Cullen v. Glendora Water Co.,* 113 Cal. 503, it was held that a part of the fourth section of the act generally known as the Wright act, which provided that, in a proceeding to confirm the organization and bonds of an irrigation district, "a motion for a new trial must be made upon the minutes of the court," was a special law regulating the practice of courts of justice and unconstitutional. In *Pasadena v. Stimson,* 91 Cal. 238, it was held that section 870 of the municipal corporation act of 1883, requiring cities of the fifth and sixth classes to make an effort to agree before instituting condemna-

tion proceedings, was unconstitutional. And so in the late case of *Tulare v. Hevren,* 126 Cal. 226, this court held that that portion of the general act of the state in regard to municipal corporations, by which it is provided that in municipal corporations of the fifth class courts shall take judicial notice of all ordinances of the municipality, was unconstitutional. It is claimed that corporations are a class and that classifications can be made, and that a law is not unconstitutional if it affects all of a class. While this is true, yet the classification must be founded upon differences either defined by the constitution or natural, or which will suggest a reason which might naturally be held to justify the diversity of legislation. (*Darcy v. Mayor etc.,* 104 Cal. 645; *State v. Hammer,* 42 N. J. L. 439; Cooley on Constitutional Limitations, 6th ed., 484.) Arbitrary selection can never be justified by calling it classification. (*Gulf etc. Ry. Co. v. Ellis,* 165 U. S. 159.) In this case there can be no reason why a corporation doing business in this state should have its property subjected to a lien, unless the property of other persons in the state under like circumstances is subject to the same kind of a lien, or why such corporations should be prohibited from making defenses which all other persons in the state may make, or why such corporations should pay attorneys' fees or fines in an ordinary action at law while all other persons under like circumstances are exempt from such attorneys' fees and fines, or why such corporation cannot create valid liens upon its property other than by a deed or mortgage duly recorded while all other persons in the state may do so, or why such corporations shall be denied the privilege of making a contract as to the manner of payment of its employees while all other persons in the state who are over twenty-one years of age and not incompetent may do so, or why laborers cannot make a valid contract as to the time when their wages shall become due, or the kind of property or money in which they shall be paid. It is said that corporations being the creatures of the state, and deriving their powers from their charters, the same power that created them may alter or amend their charters or deprive them of rights originally given them. This is true as to certain purposes, but the legislature cannot, after creating a corporation and while it exists, deprive

it of the rights guaranteed to it by the federal constitution, nor deprive it of its right to resort to the courts of law, nor take its property without due process of law, nor subject it to unequal and oppressive burdens, nor deprive it of the equal protection of the laws. (*Maine etc. R. R. Co. v. Maine*, 96 U. S. 499; *Sinking Fund Cases*, 96 U. S. 700; *Railroad Tax Cases*, 13 Fed. Rep. 754, 755; *Detroit v. Detroit etc. Plank Road Co.*, 43 Mich. 140-47.)

But the act in question applies not only to the corporations existing under the laws of this state, but to all other corporations doing business in this state and in no wise indebted to the state for their charters. Surely, the legislature of this state could not alter, amend, or repeal the charter of a corporation existing under the laws of another state. Counsel for respondent states that similar statutes have been upheld in *Shaffer v. Union etc. Co.*, 55 Md. 74, *State v. Peel Splint Coal Co.*, 36 W. Va. 802, and *Hancock v. Yaden*, 121 Ind. 366, 16 Am. St. Rep. 296.

The statute upheld in *Shaffer v. Union etc. Co., supra*, was one which provided that every corporation engaged in manufacturing or in operating a railroad in a certain county and employing ten hands or more should pay its employees the full amounts of their wages in legal tender money of the United States, and that every contract for the payment of such wages in any other manner be null and void. The ground upon which the act was upheld was that the legislature had the right to alter or amend the corporate charter. It is evident, in view of the authorities hereinbefore cited, that the ruling upon such ground was clearly incorrect. The decision cannot be regarded as of much value as a contribution to jurisprudence, and an examination of the authorities therein cited does not support it.

The case of *State v. Peel Splint Coal Co., supra*, upheld the validity of two statutes of West Virginia, one prohibiting the payment of employees in paper redeemable otherwise than in lawful money, and the other prescribing a certain method for weighing coal at the mouth of a mine. The court consisted of four judges, and two of the four can affirm a judgment. The judgment was affirmed by two judges, and two dissented. The opinion of the two affirming the judgment, while lengthy, is not convincing.

The decision appears to have been based upon practically the same reasoning as the Maryland case, that, the corporation being a creature of the legislature and having a license under the state, the legislature could practically deprive it of any rights. In view of the fact that the opinion is in direct conflict with the two previous decisions of the same state, and is the opinion of two judges as against two others of the same court, it cannot have weight here.   It seems to us that anyone reading the able dissenting opinions of Judge English and Judge Brannon would be satisfied that the decision is wrong.   Judge Brannon, in his dissenting opinion, says: "If, upon the suggestion of a supposed or real evil, always incident to the transaction of all business, the legislature can restrict lawful contracts, in private business, governments become not simply paternal but oppressive and tyrannical.   The 'scrip act' would prevent the farmer, brick-maker, or coal operator from giving to his hands for wages an order to anyone for sugar, coffee, flour, or meat—a great reversal in the right of contracts as used time out of mind."

*Hancock v. Yaden, supra,* turned on the validity of a statute of Indiana which forbade the execution of contracts waiving the payment of wages in money.   The court sustained the law, and the decision is the most direct authority in favor of plaintiff's contention of any he has cited.   There is no authority cited in the opinion upon which it can legally stand.   The court sustained the law upon the ground, "that it protected and maintained the medium of payment established by the sovereign power of the nation."   Even if this be so, it is self-evident that the legislature, in passing the act, did not have in mind the protection of the coinage.   The policy of the law in protecting the coin of the country would justify stringent laws against counterfeiting or debasing it, but certainly could not justify a law that precludes persons from agreeing to receive payment of their debts in anything but money.   Since the submission of this case our attention has also been called by counsel for plaintiff to a decision of the circuit court of the United States for the ninth circuit of northern California in the case of *Skinner v. Garnett Gold Min. Co.,* 96 Fed. Rep. 735, in which this very statute was upheld.   While we have the greatest respect for the able judge who wrote the opinion, yet it is not binding

on us as a precedent, and the reasoning therein does not convince us of its correctness, nor in our opinion do the authorities therein cited support it.    The learned judge refers to the case of *Louisville etc. R. R. Co. v. Tennessee R. R. Commission etc.*, 19 Fed. Rep. 679.    In that case the circuit court of the United States held unconstitutional an act of the legislature of the state of Tennessee creating a railroad commission and making certain discrimination against railroads.    In the opinion it is said: "Their general object [referring to the provisions of the fourteenth amendment] is to secure to all citizens in like circumstances an equality of legal rights and to protect minorities and other interests not strong enough to protect themselves against the aggressions of the majority to restrain all injurious legislation discriminating against persons and property; . . . . to compel an equal distribution of the burdens of government upon every citizen, natural or corporate, coming fairly within the purview of the law, and to give to everyone an equal right to invoke the remedies prescribed by law for the redress of wrongs done either to his person, reputation, or property."    In the opinion of the learned judge it is further stated that the act of March 31, 1891 (Stats. 1891, p. 195), similar to the statute in question relating to the payment of wages of laborers by corporations, has been construed in *Keener v. Eagle Lake Land etc. Co.*, 110 Cal. 627, and *Ackley v. Black Hawk etc. Co.*, 112 Cal. 42; and that the act in question is directed to the same end as the statute of 1891.    The act was under consideration but not passed upon as to its constitutionality in either case.    In each case it was held that the laborers were entitled to an ordinary judgment such as is granted to other litigants, and in each of the cases the judgment of the lower court as to counsel fees and as to the judgment being declared a lien was reversed.    In the case in 110 California it is said in conclusion of the opinion: "That portion of the judgment awarding counsel fees, and declaring that the plaintiff is entitled to a lien upon the property of the defendant, and directing a sale of such property, is reversed."    And in the case in 112 California the same ruling was made and the same language used in reversing the portion of the judgment as to counsel fees and declaring the judgment a lien.    The act of 1891 has, however, by this court in Bank, been

held unconstitutional as special legislation in favor of a class and making an arbitrary classification. (*Slocum v. Bear Valley Irr. Co.*, 122 Cal. 555; 68 Am. St. Rep. 68.)

The court properly overruled the defendants' demurrer to the complaint. The allegation as to the assignment of the several causes of action prior to the time of the commencement of the action to plaintiff was sufficient when attacked by general demurrer. That portion of the judgment in favor of plaintiff and against the defendant corporation for five thousand and thirty-nine dollars and fifty-seven cents, with costs, should be affirmed. The portion awarding the plaintiff four hundred dollars attorney's fees, and declaring that the plaintiff is entitled to a lien upon the property of defendant corporation and to have a commissioner appointed to sell the property, should be reversed.

Haynes, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion that portion of the judgment in favor of plaintiff and against the defendant corporation for five thousand and thirty-nine dollars and fifty-seven cents, with costs, is affirmed. The portion awarding the plaintiff four hundred dollars attorney's fees, and declaring that the plaintiff is entitled to a lien upon the property of defendant corporation and to have a commissioner appointed to sell the property, is reversed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.