# Fidelity & Deposit Company of Maryland v. Logan et al.

(Decided June 21, 1929.)

(As Modified, on Denial of Rehearing, November 1, 1929.)

WILLIAM MARSHALL BULLITT, LEO T. WOLFORD, BYRON RENFREW and BRUCE & BULLITT for appellant.

LOGAN, GILLIAM & LOGAN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This action involves the correct construction and legislative intended application of sections 4659, 4134, and a part of section 723, of the 1922 edition of Carroll's Kentucky Statutes. The first one was enacted on February 3, 1893, and says: "If a surety in any official bond, or bond of a personal representative, guardian, curator, assignee or trustee, committee of a lunatic, master commissioner, receiver, or in any bond or covenant which by law may be required to be executed in court, or before an officer at the commencement or during the progress of any civil judicial proceeding, wishes to be relieved from future liability and to obtain indemnity for such as may have been incurred, or either, he may, by written notice to the principal obligor require him, by a day named therein, to appear before the court in which the original

bond was given, or in whose clerk's office the same is required to be kept, or if the bond was not given in any court, or required to be kept in any office, then before the circuit court for the county in which the principal resides, or if he has no residence in this commonwealth, then in the circuit court for the county of the residence of the surety." We will hereinafter refer to it as the "surety statute."

The second one above (4134) was enacted and became a law on November 11, 1892 (see Acts for that year [Acts 1891-92-93] pp. 318, 319), and it is in these words: "The county court may require the sheriff to give an additional bond or bonds, with good surety, to be approved by the county court whenever it may deem the interest of the state, or county demands; and the sureties on all the bonds executed by the sheriff shall be jointly and severally liable for any default of the sheriff during the term in which said bond may be executed, whether the liability accrued before or after the execution of such bond or bonds," and which we shall hereinafter refer to as the "Cumulative Sureties Statute."

The last one of those named (723) became a law on April 14, 1892, and all of its language affecting the questions here involved is: "And it shall be lawful for said company (all guaranty and surety companies who are authorized by the body of the section to become sureties on official and fiduciary bonds) to stipulate and provide for indemnity from the parties aforesaid for whom they shall so become responsible, and to enforce any bond, contract, agreement, pledge or other security made or given for that purpose," which section we will refer to as the "enabling statute." It will thus be seen that the "enabling statute" was the first one of the three above-mentioned ones to become a law, and the next one was the "cumulative sureties statute," while the last one to do so was the "surety statute."

At the regular November election in 1925, H. Lee Kelly was elected sheriff of Warren county, and before being inducted into office on the first Monday in January, 1926, the appellant and plaintiff below, Fidelity & Deposit Company of Maryland, became surety on his official and revenue bonds, and which it renewed at the proper time for the year 1927. On July 29, 1927, in an effort to avail itself of the remedy given by the surety statute (section 4659), it served notice on the sheriff that it would on August 22 thereafter enter motion before the

county court of Warren county for a cancellation of the bonds upon which it was surety for him, and for an indemnifying bond from him securing plaintiff against past defalcations, both of which reliefs the statute by its express terms affords. The motion was made on the day fixed in the notice before the county judge, who was then Hon. W. R. Gardner, and he overruled it and refused to grant the plaintiff here (who was the movant there) any relief whatever, and dismissed its application.

This action in the Warren circuit court was then filed against the then county judge (who later resigned), followed by revivor against his successor, and the sheriff for appropriate directing orders from the circuit court to the sheriff and the county judge, looking to the obtention of the relief that the county judge had denied. At the hearing in the circuit court plaintiff's petition was dismissed; the court being of the opinion, as was also the county judge, that the principles announced in the case of United States Fidelity & Guaranty Co. v. Paxton, 142 Ky. 361, 134 S. W. 481, governed the facts of this case and disentitled plaintiff to the relief given by the surety statute. From the latter judgment plaintiff prosecutes this appeal, and contends through learned counsel that the Paxton opinion is unsound and should be overruled. The attacks made on it are: (1) That the construction therein given by this court to the surety statute, and the limitations given to its applicability because thereof, renders the whole statute illegal, as in violation of the Fourteenth Amendment to the Federal Constitution, and also violative of section 238 of our state Constitution; and (2) that, aside from any constitutional questions, the court in the Paxton opinion erroneously construed the language in the surety statute as modified or qualified (which the opinion said was true) by that employed in either or both of the other two, but which latter counsel deny, and insist that neither of the last two sections qualify or affect at all the first one. We will dispose of the two contentions in the order named.

1. The Fourteenth Amendment to the federal Constitution denies the right of a state to enact or enforce any law "which shall abridge the privileges or immunities of citizens of the United States," and it inhibits any state from depriving "any person of life, liberty, or property, without due process of law" and from denying "to any person within its jurisdiction the equal protection of the law." Section 238 of the Kentucky Constitu-

tion says: "The General Assembly shall direct by law how persons who are, or may hereafter become, sureties for public officers, may be relieved of or discharged from suretyship." That the "due process" and the "equal protection" clauses of the Fourteenth Amendment to the federal Constitution apply to corporations, as well as individuals, is so firmly settled by both federal and state opinions as to no longer be opened to dispute, and which learned counsel for defendants admit. A recent opinion from the Supreme Court, in which it was so adjudged, is that of Power Manufacturing Co. v. Saunders, 274 .U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165. In the opinion in that case other prior ones from the same court may be found. The surety statute inserted above was undoubtedly enacted pursuant to the command given to the Legislature by section 238 of our Constitution, and it was intended to and does provide a remedy by which a surety on an official or fiduciary bond may not only become relieved of all future liability, but also may be indemnified for past incurred liability, and its language is so sweeping as to apply to all classes of sureties, whether individual or corporate, or whether paid or voluntary ones.

There is nothing in the language of the section to indicate that the remedy provided therein should be withheld from a *corporate* surety and be available to an individual one, or vice versa; nor anything therein to indicate, that a *paid* surety was excluded therefrom, or that the remedy was enacted solely for the benefit of a voluntary one. This court, therefore, in the Paxton case, in order to arrive at the conclusion it did, was compelled to look elsewhere for a reason upon which to base its conclusion, and the place where it looked for that purpose was the above inserted language, supra, from the "enabling statute" (section 723), and after doing so the opinion said: "We construe this (section 723) statute to mean that if a surety company desires to be in a position to demand indemnity from its principal, it must so stipulate in the contract, and that, if it fails to do this, it cannot require its principal to indemnify it. It would, therefore, seem that the sections of the statute cited providing a means by which sureties may obtain indemnity have no application to a corporation created by law for the purpose of becoming surety for compensation in official bonds, unless the contract so provides, and as it does not appear that the appellant company contracted

with Paxton for indemnity, it could not require him to furnish it.''

It will be observed that the only reason given by the court for the interpretation adopted in the Paxton opinion was that the excerpt above from the enabling statute gave to the corporate surety company the right to contract with its principal and to stipulate therein for indemnity for past defalcations, but that the statute did not purport to give it the right to stipulate for exoneration from future liability, or a *cancellation* of its indemnifying bond, both of which are provided for by the surety statute. Therefore, if it should be conceded that the Paxton opinion was sound, it would then leave a corporate surety the right to invoke that part of the remedy afforded by the surety statute, in order to become exonerated from future liability and to procure a cancellation of the bond it executed, if it so stipulated with its principal.

A close examination into the matter would have enabled the court in that opinion to have discovered that the title to the enabling statute (section 723), as will be seen from Acts 1892, p. 43, read: ''An act to authorize fidelity and guaranty companies of *other states* to transact surety business in the state of Kentucky.'' (Our emphasis.) So that, under section 51 of our Constitution, requiring an act to relate only to one subject, and it ''shall be expressed in the title,'' all of the enacted portions of the enabling statute purporting to apply to *all* corporate sureties was invalid, since the title only related to such surety companies ''of other states,'' and which limited its provisions to only foreign indemnity or guaranty companies. The situation, then, was that the entire statute was invalid, because its body referred to objects and subjects that were excluded in its title. If, however, notwithstanding that fact, that statute should be held to be valid, and to apply to only foreign indemnity companies, as so confined by its title, then it probably might be successfully attacked (a question which we do not now determine) on the ground of discriminating against such foreign indemnity companies and in favor of similar domestic companies. It is most certainly true that, as enacted in its body, and as interpreted in the Paxton opinion, it did and will continue to discriminate if the interpretation in that opinion is to be adhered to, against corporate sureties in favor of individual sureties, whether they are paid or voluntary

ones. In other words, if the surety is a corporate one, under the interpretation of that opinion, the provisions of the enabling statute would have the effect of depriving it of the remedy given by the sureties statute, and for no reason whatever, except that it was a corporation, and which would be a clear violation of the provisions of the Fourteenth Amendment of the federal Constitution.

It may not be disputed that for many purposes foreign corporations may be classified separately from both individuals and domestic corporations, and dealt with differently in regard to such matters; but the matter of foreign corporations doing business in the state being entitled to the equal protection of the laws, to due process of law, and to all the privileges and immunities of citizens of the United States, no such classification may be made, as is expressly so determined in the Saunders case, supra. The enabling statute does not purport to confer upon corporate sureties any exclusive power or authority in remuneration for or in consideration of excluding them from the remedy conferred by the surety statute. We know of nothing to prevent such corporate sureties before the enactment of the enabling statute from stipulating with their principals for the indemnity or relief referred to in that statute, and which under the Paxton opinion excluded them from the remedy provided in the surety statute.

It certainly would not be against public policy to require a surety on an official or fiduciary bond (whether paid or voluntary) to take indemnity from his principal, and the excerpt from the enabling statute, and upon which the Paxton opinion was rested, was no doubt employed by the Legislature for the purpose of excluding all doubt as to the right of corporate sureties (either foreign or domestic) to continue to have the right to exact such stipulated indemnity from their principals. To adopt and enforce the discriminatory interpretation of the Paxton opinion, so as to deprive a corporate surety on official and fiduciary bonds of the remedy given by the surety statute, is violative of the provisions of the federal Constitution, supra, is further established by the opinions in the cases of State v. Nashville, Chattanooga & St. L. R. R., 124 Tenn. 1, 135 S. W. 773, Ann. Cas. 1912D, 805; Phipps v. Wisconsin Cent. Railway Co., 133 Wis. 153, 113 N. W. 456; Johnson v. Goodyear Mining Co., 127 Cal. 4, 59 P. 304, 47 L. R. A. 338, 78 Am. St. Rep. 17; Bogni v. Perotti, 224 Mass. 152, 112 N. E. 853, L. R. A. 1916F, 831; and by other federal opinions other than

782

the Saunders one, supra, of Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375, and L. & N. Ry. v. Railroad Commission (C. C.) 19 F. 679. See, also, the text in 12 C. J. 1183.

In the case of Mutual Fire Insurance Co. of New York v. Hammond, 51 S. W. 151, 21 Ky. Law Rep. 204, we held that a Code provision providing for the assessment of 10 per cent. damages on affirmances of judgments for money against foreign insurance companies, although the judgment was not superseded, was such a discrimination against such foreign companies and in favor of domestic companies, against whom such damages could not be assessed unless the judgment against them was superseded, and was unconstitutional as violative of the provisions of the Fourteenth Amendment to the federal Constitution. That case involved the direct question, which was before the court in many of the other cases, supra; i. e., as to whether the federal amendment, supra, guaranteed to citizens (both corporate and individual) of other states the same remedies afforded citizens of the state, and it was held in each case that it did do so.

But it is insisted that the cumulative sureties statute (section 4134, supra, and applying only to sheriff's bonds) had the effect to repeal the surety statute (section 4659), because the former provided for cumulative suretyship throughout the official term as between sureties on any of the officers' bonds, though executed at any time during his term. In the first place, the language alone of the cumulative sureties statute cannot be made to have such effect under any interpretative rule known to us. It did not purport to deal with the subject of *indemnifying* prior sureties on the sheriff's bond, or bonds for past defalcations, nor does its language purport to, or in any wise, affect the right of a surety to obtain cancellation of his bond, so as to relieve him of all future defalcation. The only effect to be given the language of the cumulative sureties statute was and is to make subsequent sureties jointly liable with former ones throughout the entire term of the sheriff, the performance of whose duties was guaranteed by them. If, however, it were otherwise, then, as we have seen, the sureties statute was enacted nearly a year after the cumula-

tive sureties statute was enacted, and therefore, if there should be any conflict in their terms, the later enacted statute (4659) would prevail over the first enacted one, so as to prevent the terms of the first one from qualifying, modifying, or in any wise affecting those of the later enacted one, and which statement also applies to the enabling statute (section 723), although the court denied the surety in the Paxton case the benefit of the remedy provided in the surety statute, which was enacted long after the enabling statute.

2. What we have hereinbefore said substantially disposes of contention 2 adversely to defendants. We have referred to the sweeping, all-inclusive, and unambiguous language of the surety statute, giving the remedy that plaintiff sought to invoke in this case. We have also pointed out that there was nothing contained in the language of the other sections referred to of our statute curtailing the scope and the all-inclusive terms of the invoked statute, and we have likewise pointed out that, if it were otherwise, then the invoked statute (section 4659), being the last one to be enacted, should prevail over the terms of the other two. We have also shown that the court in the Paxton opinion erroneously excluded from all corporate sureties the remedy provided by the surety statute, and which was based solely upon the provisions of the enabling statute, when its title only purported to apply to *foreign* corporate sureties, and not to *domestic* ones. We have likewise shown that, if we should ignore that error of the court contained in that opinion, and accept its conclusion that *all* corporate sureties should be denied (for the reason stated therein) the benefits of the remedy afforded by the surety statute, then it is discriminatory and violative of the Fourteenth Amendment of the federal Constitution. We therefore conclude that the Paxton opinion should no longer be followed, and it is expressly overruled.

Under the terms of the remedial surety statute (section 4659), as herein construed, it was the mandatory duty of the county judge, before whom the motion was made by plaintiff herein, to sustain it, and we are asked by learned counsel for appellant not only to direct the trial court to issue the mandamus against the county judge as prayed for, but also to direct that the relief provided for by that statute take effect retroactively, as of the date the motion was made before that officer. Upon a careful consideration of the case, we have concluded

784

that we should not on this hearing determine the question embodied in the last contention; i. e., to adjudge the retroactive effect of the mandamus herein directed. Without passing upon the merits of the question embodied in that contention, we deem it sufficient to say that the governmental agencies that might be immediately and directly affected by such retroactive direction (the revenues of which are collected by the sheriff) are not parties to this litigation, since the only litigants before the court are the appellant, seeking the relief, the county judge, whose duty it was to grant it, and the sheriff, whose bond was sought to be canceled, and from whom indemnity for past defalcation was demanded. We had before us a similar question in the cases of Easum v. Bohon, 180 Ky. 451, 202 S. W. 901, L. R. A. 1918D, 1144, and Erlanger Kennel Club v. Daugherty, 213 Ky. 648, 281 S. W. 826, wherein we denied similar requests upon the ground that directly interested parties were not before the court in those cases, and, since this case is a parallel one in that respect, we have concluded to leave the question open without determination; but when the case reaches the county judge he will cause to be brought before him all such interested governmental agencies before determining the retroactive effect to be given the order herein directed, so that they may be heard on the question of plaintiff's right to such retroactive relief, and either party who may be dissatisfied with the judgment rendered on that issue can prosecute an appeal to the circuit court and from thence to this court.

Wherefore the judgment is reversed, with directions to the Warren circuit court to grant the prayer of the petition, and to direct the county judge to sustain the motion made before him by plaintiff, and to cancel the bonds upon which it was surety for the sheriff, and for further proceedings consistent with this opinion.

Whole court sitting.