ARKANSAS SAVINGS AND LOAN ASSOCIATION
BOARD et al *v.* WEST HELENA SAVINGS
AND LOAN ASSOCIATION et al

76-12                                    538 S.W. 2d 560

Opinion delivered July 19, 1976

*Harold E. Anderson Jr.,* for appellants.

*Joe N. Peacock; Schieffler & Yates,* by: *Eugene L. Schieffler,* and *Smith, Williams, Friday, Eldredge & Clark,* by: *Hermann Ivester,* for appellees.

*Wright, Lindsey & Jennings,* for intervenor appellants and for Arkansas Savings and Loan League, Amicus Curiae.

*Hardin, Jesson & Dawson,* for Arkansas Savings Savings and Loan League, Amicus Curiae.

J. Fred Jones, Justice. This is an appeal by Arkansas Savings and Loan Association Board, et al., from a judgment of the Pulaski County Circuit Court holding Ark. Stat. Ann. § 67-1831 (Repl. 1966) unconstitutional as a delegation of legislative authority to a federal agency. The pertinent provisions of the statutes pertaining to savings and loan associations, Ark. Stat. Ann. §§ 67-1801 — 67-1862 (Repl. 1966), as applied to the questions here involved appear as

follows:

67-1824. The Board shall not approve any charter application unless the incorporators establish and the Board shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and the official records of the Supervisor that:

(1) All the prerequisites for the approval of a charter set forth in this act [§§ 67-1801 — 67-1862] have been complied with.

(2) The character, responsibility and general fitness of the persons named in the articles of incorporation and who will serve as directors and officers of such association are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this act and the proposed association will have qualified full-time management.

(3) There is a public need for the proposed association and the volume of business in the area in which the proposed association will conduct its business is such as to indicate a successful operation.

(4) The operation of the proposed association will not unduly harm any other existing association or federal savings and loan association or other financial institution.

If the Board so finds, its findings shall be stated in writing, and the supervisor shall indorse on the proposed articles of incorporation and by-laws the approval of the Board, whereupon the proposed association shall be a corporate body and may exercise the powers of a savings and loan association as set forth in this act. A copy of the articles of incorporation of such association bearing the approval of the Supervisor shall be filed in the office of the Supervisor, with the Secretary of State and with the county clerk of the county in which the home office of the association is located.

67-1825. If the Board does not make the findings as required by this act [§§ 67-1801 — 67-1862], it shall issue a written statement of its grounds for such refusal and this statement shall be promptly mailed to the chairman

of the incorporators by certified mail.

67-1826. An association shall furnish satisfactory evidence to the Supervisor that it has commenced business within six [6] months from the date its articles of incorporation are approved. If any association whose charter has been approved fails to commence business within six [6] months after the date of such approval and the Supervisor so finds after notice and hearing, he shall enter an order canceling such charter, unless good cause is shown for such failure, in which event the Supervisor shall grant a reasonable extension of the time for commencing business, not to exceed twelve [12] months, to give such association an opportunity to overcome the cause for the delay. The Supervisor shall file a copy of any order canceling such charter with the Secretary of State and with the county clerk of the county in which the home office of such association is located.

67-1831. No association hereinafter chartered under this act [§§ 67-1801 — 67-1862] shall carry on the business of a savings and loan association in this State until it has filed with the Supervisor satisfactory evidence that its savings accounts are insured by the Federal Savings and Loan Insurance Corporation or other similar agency or corporation of the United States.

The facts appear as follows: On August 22, 1972, the appellant savings and loan association board, hereafter referred to as "the board," granted a charter to the appellee West Helena Savings and Loan Association authorizing it to operate as a savings and loan association in Arkansas. The charter was to expire on February 22, 1973, and was conditioned upon the association obtaining insurance of accounts from the Federal Savings and Loan Insurance Corporation,[1] or some other similar agency or corporation of the United States, before commencing business as provided in § 67-1831, *supra*.

---

[1]The Federal Savings and Loan Insurance Corporation will hereafter be referred to as "FSLIC."

West Helena Savings and Loan Association made application for the requisite insurance of accounts but the application had not been approved by February 22, 1973, and on that date West Helena Savings and Loan Association obtained an extension of its charter to February 22, 1974, as provided in § 67-1826, *supra*. West Helena Savings and Loan continued its efforts to obtain the requisite insurance but its application therefor was protested by Helena Federal Savings and Loan and by First Federal Savings & Loan Association of Helena. Apparently the Federal Housing Loan Bank Board, FHLBB, conducted hearings on the application for insurance and the application was denied because of lack of public need for additional savings and loan service in the area. On April 16, 1974, West Helena Savings and Loan Association filed suit in federal court against FSLIC and its superintending corporate agency, FHLBB, to force the issuance of insurance of accounts to West Helena Savings and Loan Association and that suit was still pending on October 29, 1973, when West Helena Savings and Loan Association applied for an additional extension of its charter to February 22, 1975. On November 12, 1973, the board's supervisor conducted a hearing on the application and by order of the supervisor on November 21, 1973, the application for further extension was denied. West Helena Savings and Loan appealed from the order of the supervisor to the board and also made direct application to the board for the additional extension. Following a hearing by the board on February 29, 1974, the supervisor's previous order was upheld and the application for extension was denied.

On May 1, 1974, the supervisor held a hearing to determine whether or not West Helena Savings and Loan had "commenced business" by February 22, 1974, and upon finding that it had not, its charter was canceled by order of the supervisor dated May 23, 1974. West Helena Savings and Loan appealed the cancellation order to the board pursuant to Ark. Stat. Ann. § 67-1809 (Repl. 1966) and the board upheld the ruling of the commissioner on the cancellation. West Helena Savings and Loan then appealed to the Circuit Court of Pulaski County as provided in § 67-1811 contending that § 67-1831 was unconstitutional as a delegation of legislative authority to a federal agency and, as already stated, the circuit court agreed. Helena Federal Savings & Loan Associa-

tion, First Federal Savings and Loan Association of Helena and the Woodruff County Savings and Loan Association intervened. The appellees, West Helena Savings and Loan and Woodruff County Savings and Loan have cross-appealed, and the Arkansas Savings and Loan League has filed an amicus curiae brief.

The appellant Arkansas Savings and Loan Association Board has designated the points on which it relies as follows:

## I

The circuit court of Pulaski County, Arkansas, erred in holding that Arkansas statutes section 67-1826 was invalidly applied to West Helena Savings and Loan Association in the canceling of its charter.

## II

The circuit court of Pulaski County, Arkansas, erred in finding Arkansas statutes section 67-1831 unconstitutional as an unlawful delegation of legislative authority to a federal agency.

Helena Federal Savings and Loan Association and First Federal Savings and Loan Association of Helena, as intervenors, joined with the board in contending that the court erred in holding § 67-1831 an unconstitutional delegation of legislative authority. West Helena Savings and Loan Association and Woodruff County Savings and Loan Association have designated the points they rely on as follows:

## I

The circuit court did not err in holding that Ark. Stat. Ann. § 67-1831 is unconstitutional and that the application of Ark. Stat. Ann. § 67-1826 to West Helena Savings and Loan Association was invalid.

## II

The circuit court erred in denying American Savings Insurance Company's motion for leave to intervene.[2]

---

[2] This company was originally a cross-appellant but dismissed its appeal after the record and briefs were filed herein.

### III
The circuit court erred in not admitting into evidence the exhibits submitted by the appellees.

### IV
The circuit court erred in limiting West Helena Savings & Loan Association's time within which to commence business to six months.

### V
West Helena Savings and Loan Association commenced business prior to expiration of its charter.

### VI
West Helena Savings & Loan Association was entitled to an extension of its charter.

The board argues under its first point that we need not reach the constitutional issue on this appeal because there was evidence that the appellee association had not procured an indemnity bond as required by Ark. Stat. Ann. § 67-1833 (Repl. 1966) or paid an annual fee as required by Ark. Stat. Ann. § 67-1854 (Repl. 1966), and that this evidence alone was sufficient to show that the appellee association had not commenced business. The board argues that this is especially true since the board is subject to the Arkansas Administrative Procedure Act under which judicial review of decisions of agencies is limited to a determination of whether there is any substantial evidence to support the action of the board or commission, and the courts do not evaluate the weight or preponderance of the evidence. *Ark. Racing Comm'n* v. *Emprise Corp.*, 254 Ark. 975, 497 S.W. 2d 34 (1973).

The fallacy in this argument lies in the use of the term "commenced business" in § 67-1826. The Savings and Loan Association Act does not specify that procuring an indemnity bond or paying annual fees are prerequisites for *commencing business*. Indeed, since the annual fee is not due under § 67-1854 until an annual report is filed, it could be logically argued that the payment of such fee is a requirement for "carrying on business" rather than for "commencing business." Furthermore, it is clear that the failure to secure FSLIC insurance was the primary, if not the only, reason the

association had not commenced business and the supervisor and board so found. The requirement for FSLIC insurance is for "carrying on business." Section 67-1831, *supra; Morrilton Fed. S & L v. Ark. Valley S & L,* 243 Ark. 627, 420 S.W. 2d 923 (1967). In *Fl₁ -sheim Bros. Dry Goods Co.* v. *Lester,* 60 Ark. 120, 29 S.W. 34 (1895), this court quoted with approval from *Cooper Mfg. Co.* v. *Ferguson,* 113 U.S. 727 (1885), as follows:

> The meaning of the phrase "to carry on," when applied to business, is well settled. In Worcester's Dictionary the definition is: "To prosecute, to help forward, to continue, as to carry on business," etc.

This definition implies the continuing of something already begun. Therefore, it could be argued just as logically that the trial court judgment could be affirmed rather than reversed without considering the constitutionality of § 67-1831 since the supervisor and the board erred in considering factors not prerequisites for "commencing business" in denying the charter. We find no merit in the appellant's first contention.

The primary controversy in this case boils down to a rather simple question of law as to whether § 67-1831 is an unconstitutional delegation of legislative power to a federal agency as found by the trial court and whether the trial court erred in so holding as contended by the appellant board under its second point. The question of law is rather simple but the answer to the question is not. The appellants and the appellees agree as to the following basic rule of law:

> [T]he functions of the Legislature must be exercised by it alone. That power cannot be delegated to another authority. Ark. Const. Art. 4. *Oates* v. *Rogers,* 201 Ark. 335, 144 S.W. 2d 457 (1940); *Walden* v. *Hart,* 243 Ark. 650, 420 S.W. 2d 868 (1967).

The appellants and also the appellees cite 16 Am. Jur. 2d Constitutional Law, § 242, which reads in part as follows:

> As has already been indicated, the rule of nondelegability is applicable to legislative powers only; the rule does not bar Congress or other legislatures from delegating such of their powers as are not legislative in nature.

Thus, the rule is that in order that a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must appear that the power involved is purely legislative in nature — that is, one appertaining exclusively to the legislative department. It is the nature of the power, and not the liability its use or the manner of its exercise, which determines the validity of its delegation.

The FSLIC was organized by an act of Congress and became a body corporate in 1934. It was placed under the authority of the FHLBB an entirely separate federal corporate entity. FSLIC was organized primarily for the purpose of insuring federal savings and loan accounts with power to borrow from the United States treasury. As a part of its authority Tit. 12, USCA, § 1726 (a), provides as follows:

It shall be the duty of the Corporation to insure the accounts of all Federal savings and loan associations, and it may insure the accounts of building and loan, savings and loan, and homestead associations and cooperative banks organized and operated according to the laws of the State, District, Territory, or possession in which they are chartered or organized.

The Act then provided for investigative procedures and requirements for obtaining insurance, and subsection (c) of § 1726 provides as follows:

The Corporation shall reject the application of any applicant if it finds that the capital of the applicant is impaired or that its financial policies or management are unsafe; and the Corporation may reject the application of any applicant if it finds that the character of the management of the applicant or its home financing policy is inconsistent with economical home financing or with the purposes of this subchapter. Upon the approval of any application for insurance the Corporation shall notify the applicant, and upon the payment of the initial premium charge for such insurance, as provided in section 1727 of this title, the Corporation shall issue to the applicant a certificate stating that it has become an insured institution. In considering applications for such

insurance the Corporation shall give full consideration to all factors in connection with the financial condition of applicants and insured institutions, and shall have power to make such adjustments in their financial statements as the Corporation finds to be necessary.

It would thus appear that FSLIC has no discretion in rejecting applications for insurance except as provided in the Congressional Act. Certainly it would appear that in administering the Act by borrowing funds from the United States treasury and insuring state savings and loan accounts, FSLIC should not be totally unrestricted in determining the insurability of its insured. Whether the authority for rejecting applications for insurance thus delegated to FSLIC by the Congress was a delegation of administrative or legislative authority is really not before us on this appeal. If FSLIC did exercise legislative authority in denying West Helena's application for insurance, it either exercised such authority under its delegation from Congress or it unlawfully exercised a legislative authority it did not possess. In any event the Arkansas Legislature delegated no such authority to FSLIC.

There is no question that the Legislature has the power to regulate savings and loan associations under the police power of the state and the legislative authority to require insurance on savings and loan accounts as a prerequisite to doing business is not seriously questioned in this case. In 78 ALR at page 1090 is found an annotation as follows:

In view of the general scheme and purpose of building and loan associations, the state, under its police power, may assert rights of inspection and supervision over them which it may not deem necessary with respect to corporations organized for profit generally. *Union Sav. & Invest. Co.* v. *District Ct.* (1914) 44 Utah, 397, 140 Pac. 221, Ann. Cas. 1917A, 821.

The business of building and loan associations is subject to regulation under the police power of the state, as well as the business of banking and of insurance. *Mechanics Bldg. & L. Asso.* v. *Coffman* (1913) 110 Ark. 269, 162 S.W. 1090. In this instance the court sustained the validity, as applied to a building and loan association, of

the Arkansas statute making it the duty of the insurance commissioner to conduct an examination of investment companies coming within the provisions of the act, at the expense of the companies, and declaring, among other things, that, if he found a company solvent and its constitution and by-laws and proposed plan of business to be fair, just, and equitable, he should issue a permit to do business, — otherwise he should refuse such permit. Provision was also made, in case the right of any investment company to do business in the state was refused or revoked, for the institution of a suit to annul such refusal or revocation. The statute was held not to confer upon the insurance commissioner judicial or legislative power, and not to make an arbitrary or unreasonable classification.

By Ark. Stat. Ann. § 67-1831 (Repl. 1966) the Legislature simply required that all savings and loan associations thereafter chartered furnish "satisfactory evidence that its savings accounts are insured by the Federal Savings and Loan Insurance Corporation or other similar agency or corporation of the United States." The FSLIC was not told or requested to do anything and FHLBB was not even mentioned in the Act.

The parties to this litigation have cited numerous cases but none of them are squarely in point with the question here involved and our own research has revealed no such case. The Idaho case of *Idaho S & L Ass'n* v. *Roden,* 350 P. 2d 225, comes as near to the point involved as any case we have found. Legislative authority was unlawfully delegated by the Idaho Legislature in *Roden* but such delegation was discreetly avoided by the Arkansas Legislature in the case at bar. The trial court in *Roden* attempted to sever the unconstitutional delegation of legislative authority portion of the Act from that portion of the Act requiring the savings and loan associations to obtain the insurance. The pertinent portions of the *Roden* decision read as follows:

Idaho Code, § 30-1301Q, subsection 2, exempted corporations which had been in continuous operation for a period of more than 15 years from the requirement that they procure insurance of accounts with the Federal

Savings and Loan Insurance Corporation.

The trial court entered a judgment holding I.C., § 30-1301Q, subsection 2, void and ineffective, quoting the void and ineffective portion, to wit:

"* * * except such as shall have been in continuous operation for a period of more than fifteen years prior to the effective date hereof * * *"

in that it violated the Idaho Constitution, Article 1, secs. 1 and 2, and the Fourteenth Amendment to the Constitution of the United States.

After holding there was no reasonable basis for making a distinction between corporations having been in continuous business 15 years or longer and other corporations, the trial court then held all savings and loan associations of the State of Idaho were required to insure their accounts with the Federal Savings and Loan Insurance Corporation.

[1] In accordance with *Morey* v. *Doud,* 354 U.S. 457, 77 S. Ct. 1344, 1 L. Ed. 2d 1485; *Fidelity & Deposit Company of Maryland* v. *Logan,* 230 Ky. 776, 20 S.W. 2d 753; *State* v. *Glidden,* 228 N.C. 664, 46 S.E. 2d 860; *Eslin* v. *Collins, Fla.,* 108 So. 2d 889; *Northwestern National Ins. Co.* v. *Fishback,* 130 Wash. 490, 228 P. 516, 36 A.L.R. 1507; *Crom* v. *Frahm,* 33 Idaho 314, 193 P. 1013; *Newland* v. *Child,* 73 Idaho 530, 254 P. 2d 1066, the trial court was correct in holding the distinction arbitrary, unreasonable, and discriminatory as to corporations of the same classification, such as we have in savings and loan associations in the State of Idaho. However, the trial court erred in striking that provision from the Act and in effect bringing the exempted savings and loan associations within the purview of the Act.

The trial court also held the Idaho Legislature unlawfully delegated its authority to an agency of the United States government in enacting the following sections: I.C. § 30-1301A, 30-1301H, subd. 3, 30-1301M, 30-1301Q, subds. 1 and 2, in that a savings and loan

association, as a condition precedent to obtaining insurance of accounts with the Federal Savings and Loan Corporation, is required to abide by and conform with rules and regulations of the Federal Home Loan Bank Board adopted after enactment of the Idaho legislation, and to abide by and conform with any amendment to Title 4 of the Housing Act relating to insurance of accounts which may become effective after the date of the Idaho act. After holding these provisions to be an unlawful delegation of legislative power to the Federal government and its agency, the trial court struck those provisions from the Act on the ground they were severable. Plaintiff agrees to the unconstitutionality of delegation or authority, but argues the delegation of power is not severable.

Subsequent to the enactment of the provisions of this Act which the plaintiff is contesting, the Federal Home Loan Bank Board and the Federal Savings and Loan Insurance Corporation have enacted several modifications of the rules and regulations governing applicants and members. Defendants argue that future rules and regulations should not be considered herein as they do not affect the plaintiff. This argument is not persuasive, inasmuch as the question to be resolved is whether or not the Legislature of the State of Idaho, contrary to the Idaho Constitution, Article 3, section 1, unlawfully delegated its authority to the federal government and an agency thereof.

[2] The legal axiom that all legislative power is vested in the Legislature of the State of Idaho has been set forth in *State* v. *Nelson,* 36 Idaho 713, 213 P. 358. The legislature cannot delegate its authority to another government or agency in violation of our Constitution. *State* v. *Nelson, supra; State* v. *Heitz,* 72 Idaho 107, 238 P. 2d 439.

[3, 4] In dealing with the problem as to whether the unconstitutional provisions are severable, we must look to the effect upon the legislation of the deletion of these provisions. Under the decision of the trial court, the plaintiff is not required to observe future rules and regulations of the Board nor future amendments of the

National Housing Act. But an agreement to observe and be bound by future amendments to the National Housing Act and future rules and regulations of the Board is exacted as a condition to granting the insurance, and also to continuing it in force. Hence, appellant can neither obtain the insurance nor continue it in force without being compelled to abide by the unconstitutional provisions of the Idaho act. Thus, it is demonstrated that the unconstitutional provisions delegating to the Congress and the Home Loan Bank Board the legislative power and function to make future laws and regulations governing appellant's business and its right to remain in business, are not severable from the provisions requiring appellant to obtain insurance of accounts by the Federal Savings and Loan Insurance Corporation. The provisions requiring such insurance are therefore unconstitutional and void.

The judgment to the extent that it holds the unconstitutional provisions of the Act severable from those requiring insurance of accounts and holding the insurance of accounts requirement valid is reversed, and the cause is remanded with directions to enter judgment in conformity herewith.

We conclude the trial court erred in holding Ark. Stat. Ann. § 67-1831 (Repl. 1966) invalid as a delegation of legislative authority.

We consider it unnecessary to discuss the other points designated by the parties except the last point designated by the appellee that "West Helena Savings and Loan Association was entitled to an extension of its charter." The appellees, in their brief, argue this point in part as follows:

[T]he only reasonable construction of Ark. Stat. Ann. § 67-1826 is that the Supervisor has authority to cancel the charter of an association which has not commenced business within the initial or an extended period of time, and that he must grant successive extensions of time not exceeding 12 months each (now two years) upon an association's showing that it has good cause for its failure to commence business. This is the only construc-

tion which is consistent with the legislative intent underlying the statute; it is the only construction which will avoid undue and unnecessary hardship to newly chartered associations; and it is the construction given to the statute by Supervisors in the past.

We agree that the Supervisor has the authority under § 67-1826 to cancel the charter of an association which has not commenced business within the initial or an extended period of time. We do not agree that the Supervisor *must* grant successive extensions of time not exceeding 12 months each (now two years)[3] upon an association's showing that it has good cause for its failure to commence business. We do agree, however, that the Supervisor *may* grant additional extensions to accomplish the purpose of the Act and that such extensions should have been granted under the facts of record in this case. Section 67-1826 does not deal with the granting of charters but deals with the revocation of charters for failure to commence business. The only purpose in requiring the Supervisor to grant a reasonable extension of time for commencing business not to exceed 12 months upon the showing of good cause, is "to give such association an opportunity to overcome the cause for the delay." Certainly the associations delay in the case at bar was because FSLIC refused to insure the accounts of the association and the association could have had no better reason for not commencing business under the requirements of the statute.

It must be remembered that the association's suit in federal court to force FSLIC to issue the insurance was pending when the association's request for additional extension was denied and its charter was revoked. The statute does not limit the Supervisor's authority to one single extension at the end of which the charter must be revoked. We agree with the appellees' contention "this is the only construction which is consistent with the legislative intent underlying the statute; it is the only construction which will avoid undue and unnecessary hardship to newly chartered associations."

For the error indicated the judgment of the trial court is reversed and this cause is remanded for entry of judgment not

---

[3]See Ark. Stat. Ann. § 67-1826 (Supp. 1975).

inconsistent with this opinion.

Reversed and remanded.

FOGLEMAN, J., concurs in part and dissents in part.

JOHN A. FOGLEMAN, Justice, concurring in part, dissenting in part. I fully agree that Ark. Stat. Ann. § 67-1831 (Repl. 1966) is constitutional. I have reservations about the court's construction of Ark. Stat. Ann. § 67-1826 (Supp. 1975) as permitting more than one twelve-month extension. It seems to me that the arguments favoring appellant's construction are stronger than those favoring the construction given it by the majority. Appellant says that the act provides that, after failure of the recipient of a charter to commence business within six months, the Supervisor, upon a showing of good cause, shall grant *a* reasonable extension *not to exceed* twelve months. I suppose the matter is arguable, and I defer to the wisdom of the majority since it seems that, prior to the tenure of the Supervisor who acted in this case, Supervisors had construed the Act to permit successive extensions totalling more than twelve months. Of course, administrative construction is not controlling, only persuasive. *Brawley School District v. Kight*, 206 Ark. 87, 173 S.W. 2d 125. See also, *International Shoe Co. v. Pinkus*, 278 U.S. 261, 49 S. Ct. 108, 73 L. Ed. 318 (1928).

I disagree with this court's holding that the extension in this case should have been granted. This matter has not been considered by either the trial court or the Savings & Loan Association Board or even by the Supervisor. The showing of good cause for an extension certainly involves more than showing that efforts to obtain deposit insurance have been unsuccessful. It is a matter of common knowledge that changes can take place in conditions pertinent to the grant of a charter in a matter of a few months. There must be some latitude of discretion in the matter. Otherwise, a chartered association could interminably prolong efforts to obtain insurance and the Supervisor would be required to grant extension after extension. Clearly the legislature did not intend for this to happen. The Supervisor expressly stated that he did not reach the question whether there was good cause for the

Association's failure to commence business. The Board's first order recited that the Supervisor, not the Board, was empowered to issue extensions, subject to appeal to the Board, but that there was no provision for a direct application to the Board for an extension, which the West Helena Association had made. The Board then, on appeal from the Supervisor, simply sustained the Supervisor's holding that he had no authority to grant further extensions. The charter was cancelled later.

The trial court sustained demurrers to jurisdiction on all orders except the order of cancellation by the Board. The circuit court retained jurisdiction over that order only. In his opinion, the circuit judge found it necessary to consider only one point, i.e., the constitutionality of the act.

Consequently, this court is ruling on a question never considered by the Supervisor, the Board or the trial court. I would remand the case with directions to the circuit court to remand it for consideration by the Supervisor of extension of the charter in light of this decision.