Dixon *v.* Poe.

---

## DIXON *v.* POE.

[No. 19,784. Filed November 25, 1902.]

MASTER AND SERVANT. — *Wages.* — *Assignment.* — *Payment by Trade Check.* — *Class Legislation.* — *Title of Act.* — The title of the act of March 11, 1901 (Acts 1901, p. 548), is: "An act concerning the issuance of checks, tickets, tokens, or other devices payable in merchandise, or anything other than lawful money by merchants, in payment for the assignment or transfer of wages of employes in coal mines, and repealing all laws in conflict therewith." The body of the act mentions and includes "any merchant or dealer in goods or merchandise, or any other person," upon the one hand, and "any employe or laborer for wages who labors in and about any coal mine," upon the other. *Held,* that the act must be construed as applying only to merchants and to that class of laborers who work in coal mines, and is therefore unconstitutional as being class legislation.

From Sullivan Circuit Court; *O. B. Harris,* Judge.

Dixon *v.* Poe.

Action by James H. Poe against Nathan G. Dixon. From a judgment for plaintiff, defendant appeals. *Reversed.*

*J. T. Hays* and *W. H. Hays*, for appellant.
*J. B. Filbert*, for appellee.

Dowling, J.—This action was brought by the appellee against the appellant, under the act of March 11, 1901, (Acts 1901, p. 548, §7448a Burns 1901), to recover from the appellant the amount of wages assigned by one Walsh, an employe in a coal mine in this State, to the appellant, in consideration of the issue to him of four metallic tokens calling for and payable in goods at the store of the appellant in this State. The complaint stated facts sufficient to bring the case within the statute, and a demurrer to it was overruled. An answer was filed by appellant alleging that the wages assigned were already earned at the time of such assignment; that appellant had for years owned and carried on a general retail store in this State; that the four metallic tokens expressed the agreement of the appellant to pay in merchandise at his store, at the usual cash price, the amount stamped on each of them; that Walsh, the miner, knew this, and agreed to accept merchandise in payment of the sum represented by said tokens; that the appellee had notice of these facts when he became the owner of the said tokens; that appellant has at all times been ready and willing to pay said tokens in merchandise, according to his agreement, but that neither Walsh nor the appellant has at any time demanded payment of said tokens in merchandise. A demurrer to the answer having been sustained, the appellant refused to plead further, and, upon proof of his complaint, judgment was rendered in favor of the appellee.

The errors assigned are: (1) That the court erred in overruling the demurrer to the complaint; and (2) in sustaining the demurrer to the answer. The question pre-

sented is the validity of the act of March 11, 1901, prohibiting the issuing of tokens payable otherwise than in lawful money of the United States, upon an assignment of wages earned or unearned by any employe or laborer in any coal mine in this State, and making any such tokens issued in violation of the act, in the hands of any owner, immediately due and payable in lawful money to the extent of the wages assigned.

The objections taken to the act by the appellant are that it contravenes §1, article 1, of the State Constitution, which declares that life, liberty, and the pursuit of happiness, are unalienable rights; and that it violates §23, article 1, of the Constitution which prohibits the General Assembly from granting to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not belong equally to all citizens.

We do not deem it necessary to determine the question whether the act before us unduly restricts the right of the citizens of this State to contract, or whether its practical effect may not be to take private property without due process of law. We shall consider the act solely with reference to that clause of the Constitution which interdicts class legislation, or the grant to any citizen, or class of citizens, of special privileges or special immunities.

The body of the act mentions and includes "any merchant or dealer in goods or merchandise, or any other person," upon the one hand, and "any employe or laborer for wages, who labors in and about any coal mine in this State," upon the other. So far, then, as the classification first mentioned is concerned, it is comprehensive enough to include all of the citizens of the State, treating all alike, conferring no special privileges or immunities upon any, and subjecting none to restrictions in trade or business, to deprivation of property rights, or to penalties which are not equally and impartially imposed upon all other citizens similarly situated. But an examination of the *title* of the act discloses

that its subject, as expressed therein, is not coextensive with the act itself. It is in these words: "An act concerning the issuance of checks, tickets, tokens, or other devices payable in merchandise, or anything other than lawful money by merchants, in payment for the assignment or transfer of wages of employes in coal mines, and repealing all laws in conflict therewith." So that, as the title refers only to *merchants* who issue "checks, tickets, tokens, or other devices," no persons, natural or artificial, can be brought within the scope of the act who do not belong to the particular class designated in the title as *merchants*. Const., Art. 4, §19; *Mewherter* v. *Price,* 11 Ind. 199; *State* v. *Bowers,* 14 Ind. 195; *State* v. *Young,* 47 Ind. 150.

The statute, therefore, must be treated as an enactment operative only upon two classes of persons,—*merchants,* and employes in coal mines. All other persons, copartnerships, and corporations in the State may issue checks, tickets, tokens, or other devices payable in merchandise, or anything other than lawful money, in payment for the transfer of the wages of employes in coal mines, but no *merchant* in this State is permitted to do so. The mechanic, the farmer, the professional man, the banker, or broker may lawfully take an assignment of the wages of the coal miner, and, in consideration of such transfer, may issue to the miner a check, ticket, or token payable only in merchandise, work, produce, professional services, or depreciated notes, or currency. The *merchant* must redeem *his* check, ticket, or token in gold, silver, United States treasury notes, or other lawful money of the United States. By confining the prohibitory terms of the statute to *merchants,* and exempting all other persons, natural and artificial, from their operation; by declaring void the agreement of the *merchant,* but leaving the same kind of contract valid as to the farmer, mechanic, or banker; by permitting one class of citizens to pay their debts in merchandise, but requiring another, under precisely the same circumstances, to pay in lawful

Dixon v. Poe.

money only, the act, undeniably, confers valuable privileges on the mechanic, farmer, professional man, banker, and broker, and denies them to the *merchant*. Total immunity from the restrictions, inconveniences, and losses resulting, and intended to result, from the statute is granted to one class and is impliedly withheld from another. Is a distribution of the citizens of the State in an act concerning the transfer of a claim for wages, which puts the *merchants* of the State in one class and all other citizens in another, a reasonable and constitutional arrangement? Could an act of the legislature, which authorized a judgment without stay of execution or exemption upon an account or claim due to any *merchant,* be upheld against the objection that this was a privilege granted to *merchants* as a class, and which could not, upon the same terms, be enjoyed by the other citizens of the State? Or would an act stand which fixed the amount of property to be set off to every *merchant* as exempt from execution at $1,000, while it limited exemptions to the other citizens to $600? Such a classification would be regarded by every one as unnatural, and in violation of the provision of the Constitution prohibiting such distinctions.

Again, is the classification of the supposed *beneficiaries* of the act a reasonable and legal one? They are described as "any employe or laborer for wages who labor in and about any coal mine in this State." This classification seems to rest upon no sound or proper basis. Laborers and employes engaged in a particular industry, who are no less intelligent and no less competent to care for their own interests than laborers and employes pursuing other occupations, are, by the statute, singled out and authorized to avoid their express agreements, when, under like circumstances, such other laborers and employes enjoy no such privilege. The law does not embrace all of the class to which it is naturally related. It creates a preference, and establishes an inequality among a class of citizens all of

whom are equally meritorious. It applies to persons in certain situations, and excludes from its effect other persons who are not dissimilar in these respects. Leaving the miner and the merchant free to deal with all other citizens, the act disqualifies them from contracting with each other. *State, ex rel., v. Parsons,* 40 N. J. L. 1; *Indianapolis St. R. Co. v. Robinson,* 157 Ind. 232; *Brewer v. McCleland,* 144 Ind. 423, 17 L. R. A. 845; *State v. Goodwill,* 33 W. Va. 179, 10 S. E. 285, 25 Am. St. 863, 6 L. R. A. 621; *State v. Garbroski,* 111 Iowa 496, 82 N. W. 959, 82 Am. St. 524, 56 L. R. A. 570; *State v. Fire Creek, etc., Co.,* 33 W. Va. 188, 10 S. E. 288, 6 L. R. A. 359, 25 Am. St. 891; *Brown v. Russell,* 166 Mass. 14, 43 N. E. 1005, 32 L. R. A. 253, 55 Am. St. 357; *Frorer v. People,* 141 Ill. 171, 31 N. E. 395, 16 L. R. A. 492; *Wally's Heirs v. Kennedy,* 2 Yerg. (Tenn.) 554, 24 Am. Dec. 511; *Bank, etc., v. Cooper,* 2 Yerg. (Tenn.) 599, 24 Am. Dec. 517.

It is said by Judge Cooley in Const. Lim. (5th ed.), 393: "The doubt might also arise whether a regulation made for any one class of citizens, entirely arbitrary in its character, and restricting their rights, privileges, or legal capacities in a manner before unknown to the law, could be sustained, notwithstanding its generality. Distinctions in these respects must rest upon some reason upon which they can be defended,—like the want of capacity in infants and insane persons; and if the legislature should undertake to provide that persons following some specified lawful trade or employment should not have capacity to make contracts, or to receive conveyances, or to build such houses as others were allowed to erect, or in any other way to make such use of their property as was permissible to others, it can scarcely be doubted that the act would transcend the due bounds of legislative power, even though no express constitutional provision could be pointed out with which it would come in conflict. To forbid to an individual or a class the right to

Dixon *v.* Poe.

the acquisition or enjoyment of property in such manner as should be permitted to the community at large, would be to deprive them of *liberty* in particulars of primary importance to their 'pursuit of happiness;' and those who should claim a right to do so ought to be able to show a specific authority therefor, instead of calling upon others to show how and where the authority is negatived."

The statute under review does undertake to provide that persons following the lawful trade of *merchants* shall not have capacity to make certain contracts, or to receive certain transfers of personal property which are entirely permissible to others. It also, and in a manner quite as offensive to the Constitution, confers privileges and immunities upon employes and laborers in coal mines which are not possessed by other citizens of this State employed as laborers in other occupations.

We do not wish to be understood as saying that statutes free from any constitutional infirmity may not be enacted, which apply exclusively to merchants, coal miners, bankers, physicians, dairymen, druggists, or persons engaged in other particular occupations. Such a classification may, in some cases, be a legitimate one. But in every instance of this kind where such statutes have been upheld, the classification has rested upon some quality, condition, or state of things peculiar to the occupation itself, or upon some consideration of public policy which made it proper or necessary to regulate, control, license, tax, or prohibit it. *State, ex rel.,* v. *Green,* 112 Ind. 462; *Wilkins* v. *State,* 113 Ind. 514; *Eastman* v. *State,* 109 Ind. 278, 58 Am. Rep. 400; *Blair* v. *Kilpatrick,* 40 Ind. 312; *State* v. *Gerhardt,* 145 Ind. 439, 33 L. R. A. 313; *Ferner* v. *State,* 151 Ind. 247; *Cory* v. *Carter,* 48 Ind. 327, 17 Am. Rep. 738; *State, ex rel.,* v. *Webster,* 150 Ind. 607, 41 L. R. A. 212; *Parks* v. *State, ante,* 211.

We have found no case sustaining a statute which prohibited an individual engaged in a particular, lawful occu-

pation, and not under special disability, such as infancy, insanity, or the like, from doing an act, *not necessarily connected with his business,* which every other citizen was by law permitted to do.

The only case referred to by counsel for appellee in support of their contention that the act of 1901 (Acts 1901, p. 548, §7448a Burns 1901) is valid, is *Hancock* v. *Yaden,* 121 Ind. 366, 16 Am. St. 396, 6 L. R. A. 576. The question there was whether the legislature could prohibit men from contracting in advance to accept payment in something other than the lawful money of the country for the wages they might earn in the future. It was held that the acts prohibiting such contracts were within the scope of legislative power. The acts referred to in that case applied to "any owner, corporation, association, company, firm or person engaged in mining coal, ore or other minerals, or quarrying stone, or in manufacturing iron, steel, lumber, staves, heading, barrels, brick, tile, machinery, agricultural or mechanical implements or any article of merchandise;" and, as its beneficiaries, it embraced "any persons" executing a contract or agreement to waive his or her legal right to demand or receive from such owner, corporation, etc., at least once every two weeks, payment of the amount due to such persons for labor performed, in lawful money of the United States. Acts 1887, p. 13; Acts 1889, p. 191; Elliott's Supp., §§1599, 1610. No question as to an improper classification seems to have been made, and the act applied to all persons and corporations in this State engaged in mining, quarrying, or manufacturing, and to every one in their employment. The point decided in that case was the power of the legislature to restrict the right to contract for a waiver of the benefit of the statute. The question before us under the act of 1901, is the constitutionality of the classification adopted. *Hancock* v. *Yaden, supra,* has no application to this question, and throws no **light** upon it.

It is with great reluctance that we declare an act of the legislature invalid; but the act of 1901, *supra,* so plainly violates the rule of the Constitution forbidding the grant of special privileges and immunities to a favored class of citizens and subjecting another class to special disabilities and restrictions, that we have no choice but to adjudge it void.

Judgment reversed, with instructions to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.