Attorneys for the parties and amici are listed at the conclusion of this opinion

# In the
# Indiana Supreme Court



FILED

Mar 02 2016, 3:37 pm

CLERK
of the supreme court,
court of appeals and
tax court

### No. 49S00-1502-MI-119

LARRY MYERS AND LOA MYERS,                    *Appellants (Plaintiffs)*,

v.

CROUSE-HINDS DIVISION OF COOPER INDUSTRIES, INC.; AND
LORILLARD TOBACCO COMPANY AND
HOLLINGSWORTH & VOSE,                          *Appellees (Defendants)*.

Appeal from the Marion Superior Court, No. 49D02-1405-MI-14372
The Honorable Timothy W. Oakes, Judge

### No. 49S00-1501-MI-35

GENERAL ELECTRIC COMPANY,                      *Appellant (Defendant)*,

v.

MARY R. GEYMAN, ON HER OWN BEHALF AND ON BEHALF OF
THE ESTATE OF RAYMOND GEYMAN,                  *Appellee (Plaintiff)*.

Interlocutory Appeal from the Marion Superior Court, No. 49D02-9801-MI-1-360
The Honorable Theodore M. Sosin, Judge

### No. 49S00-1501-MI-36

OWENS-ILLINOIS, INC.,                          *Appellant (Defendant)*,

v.

MARY R. GEYMAN, ON HER OWN BEHALF AND ON BEHALF OF
THE ESTATE OF RAYMOND GEYMAN, DECEASED,        *Appellee (Plaintiff)*.

Interlocutory Appeal from the Marion Superior Court, No. 49D02-9801-MI-1-360
The Honorable Theodore M. Sosin, Judge

1

**March 2, 2016**

**Dickson, Justice.**

We have consolidated three appeals involving the constitutionality of the Indiana Product Liability Act statute of repose. In each case, the plaintiffs request reconsideration of our prior holding in AlliedSignal v. Ott, 785 N.E.2d 1068 (Ind. 2003). While we decline to reconsider Ott's holdings due to the principles of *stare decisis* and legislative acquiescence, we do address the plaintiffs' new constitutional claims not addressed in Ott and conclude that the Product Liability Act's statute of repose does not bar these plaintiffs' claims.

The plaintiffs, Larry and Loa Myers and Raymond and Mary Geyman,[1] brought suit alleging damages stemming from asbestos-caused diseases. Larry Myers worked as an electrician from 1959 until his retirement in 1999. During that time he was exposed to asbestos from materials he was working with or from materials at various job sites. He was diagnosed in March 2014 with malignant pleural mesothelioma, "a form of cancer which sometimes develops many years after exposure to asbestos." Appellants Myers' App'x at 110. Raymond Geyman worked for an electric utility company from 1955 to 1970, and was exposed during that time to asbestos from products he worked on and around. He was diagnosed with mesothelioma in March 2007 and died in March 2008.

In their complaints, Larry and Loa Myers listed forty defendants, and Raymond and Mary Geyman listed twenty defendants. Several defendants in each case moved for summary judgment, leading to these appeals. The first two appeals, involving the Geymans,[2] are before us on interlocutory appeal from the trial court's denial of the defendants' motions for summary judgment. The third, involving the Myers, is an appeal[3] from the entry of summary judgment for

---

[1] Raymond Geyman died in March 2008, and his estate continues this litigation.

[2] These appeals, General Electric Company v. Geyman, and Owens-Illinois, Inc. v. Geyman, arise from the same lawsuit in Marion Superior Court, Cause No. 49D02-9801-MI-1-360.

[3] Myers v. Crouse-Hinds Div. of Cooper Indus., Inc., Marion Superior Court, Cause No. 49D02-1405-MI-14372.

2

the defendants as a final judgment.  Each appeal presents essentially the same arguments, and the

central issue in each is the trial court's ruling on a motion for summary judgment asserting the

ten-year statute of repose included in Indiana's Product Liability Act.  In all three cases, we

granted a motion for transfer pursuant to Indiana Appellate Rule 56(A).

These three appeals present the same principal issue: whether the plaintiffs' claims are

barred under Ott, 785 N.E.2d 1068, in which this Court interpreted Sections 1 and 2 of the

Indiana Product Liability Act's Chapter 3.[4]  Section 1 applies to product liability actions

---

[4] Chapter 3 of the Indiana Product Liability Act provides:

> Sec. 1. (a) This section applies to all persons regardless of minority or legal disability.
> Notwithstanding IC 34-11-6-1, this section applies in any product liability action in which the
> theory of liability is negligence or strict liability in tort.
> (b) Except as provided in section 2 of this chapter, a product liability action must be
> commenced:
> > (1) within two (2) years after the cause of action accrues; or
> > (2) within ten (10) years after the delivery of the product to the initial user or
> > consumer.
> However, if the cause of action accrues at least eight (8) years but less than ten (10) years after
> that initial delivery, the action may be commenced at any time within two (2) years after the
> cause of action accrues.
>
> Sec. 2. (a)  A product liability action that is based on:
> > (1) property damage resulting from asbestos; or
> > (2) personal injury, disability, disease, or death resulting from exposure to
> > asbestos;
> must be commenced within two (2) years after the cause of action accrues.  The
> subsequent development of an additional asbestos related disease or injury is a new injury
> and is a separate cause of action.
> (b) A product liability action for personal injury, disability, disease, or death resulting
> from exposure to asbestos accrues on the date when the injured person knows that the
> person has an asbestos related disease or injury.
> (c)  A product liability action for property damage accrues on the date when the injured
> person knows that the property damage has resulted from asbestos.
> (d)  This section applies only to product liability actions against:
> > (1) persons who mined and sold commercial asbestos; and
> > (2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy
> > proceedings, been created for the payment of asbestos related disease claims or
> > asbestos related property damage claims.
> (e)  For the purposes of IC 1-1-1-8, if any part of this section is held invalid, the entire
> section is void.
> (f) Except for the cause of action expressly recognized in this section, this section does
> not otherwise modify the limitation of action or repose period contained in section 1 of
> this chapter.
> Ind. Code §§ 34-20-3-1, -2.

generally, while Section 2 applies to "[a]sbestos-related actions."[5] Ind. Code § 34-20-3-2. Ott held that Section 2 applies only to asbestos claims against defendants who both mined and sold raw asbestos, leaving "those who sell asbestos-containing products within the ambit of Section 1." 785 N.E.2d at 1073. The plaintiffs now urge us to abandon that interpretation and follow the interpretation presented by the Ott dissent.[6] Appellee Geyman's Br. at 27-37, Appellant Myers' Br. at 28-33; Ott, 785 N.E.2d at 1078-80 (Dickson, J., dissenting). We decline to alter Ott's holdings with respect to statutory construction, finding it settled under our doctrines of *stare decisis* and legislative acquiescence.

Because the General Assembly is a co-equal and independent branch of government, the doctrines of *stare decisis* and legislative acquiescence are especially compelling in matters of statutory interpretation. *See* Fraley v. Minger, 829 N.E.2d 476, 492 (Ind. 2005); Layman v. State, 42 N.E.3d 972, (Ind. 2015) ("both the doctrines of *stare decisis* as well as legislative acquiescence counsel against overruling our existing precedent [interpreting Indiana's felony murder statute]"). The twelve years since Ott has provided the General Assembly "considerable time" to change our interpretation in that case. Fraley, 829 N.E.2d at 492. "Certainly, had the General Assembly disapproved of our approach . . . it could have done so. In the absence of such a change, we think it fair to infer a persuasive degree of legislative acquiescence with respect to our approach . . . ." Bailey v. State, 979 N.E.2d 133, 141 (Ind. 2012). Because both *stare decisis* and legislative acquiescence indicate "the strong probability that [we] have correctly interpreted the will of the legislature," we will not reconsider Ott's statutory interpretation holdings. Dunson v. Dunson, 769 N.E.2d 1120, 1125 (Ind. 2002).[7]

Separate from their challenges to Ott's holdings regarding statutory construction, however, the plaintiffs argue that the statute of repose provisions, as explicated in Ott, violate

---

[5] Section 2 explicitly "applies only to product liability actions against . . . persons who mined and sold commercial asbestos [and asbestos-related bankruptcy trust funds]." Ind. Code § 34-20-3-2(d)

[6] The Ott dissent argued that under Section 2, "'commercial asbestos' includes asbestos incorporated into products," and that "persons who mined and sold" means "persons who mined and persons who sold." Ott, 785 N.E.2d at 1079, 1081 (Dickson, J., dissenting).

[7] We thank *amicus curiae* Indiana Legal Foundation for their thorough treatment of our *stare decisis* and legislative acquiescence precedent.

4

two provisions of the Indiana Constitution: its Right to Remedy Clause, Article 1, Section 12, and its Equal Privileges and Immunities Clause, Article 1, Section 23. We first address the Equal Privileges and Immunities Clause challenge.

In Ott, this Court upheld Section 1 and Section 2 against an Article 1, Section 23 challenge, finding that the statutory distinction "between asbestos victims and other victims under the product liability act" did not harm asbestos victims because they are either subject to the same Section 1 statute of repose as non-asbestos victims, or have an exception under Section 2. 785 N.E.2d at 1077. Based on its finding that "asbestos plaintiffs do not suffer any cognizable harm" as compared to non-asbestos plaintiffs, the Ott court declined relief without addressing whether the disparate treatment constituted a constitutionally prohibited disparate privilege.

The present plaintiffs, however, bring a different Article 1, Section 23 claim. Instead of comparing asbestos victims to non-asbestos victims, they compare two separate types of asbestos victims. They argue that, given Ott's statutory interpretation, Section 2 draws a constitutionally impermissible distinction between asbestos plaintiffs injured by defendants who both mined and sold raw asbestos and asbestos plaintiffs who were injured by defendants outside that category.[8] Appellants Myers' Br. at 20-21; Appellee Geyman's Br. in Gen. Elec. v. Geyman at 20; Appellee Geyman's Br. in Owens-Illinois, Inc. v. Geyman at 20-21 ("Mrs. Geyman's claims are barred on an arbitrary basis – her husband happened to be exposed to asbestos by a product manufacturer which did not also mine asbestos."); Appellants Myers' Reply Br. at 9-10 (comparing Mr. Myers to a hypothetical asbestos victim injured by a defendant who both mined and sold raw asbestos).

The present plaintiffs' claimed class distinction was not raised, and thus was not

---

[8] The defendants argue that Ott did address the plaintiffs' proposed classes. Appellees R.J. Reynolds Tobacco Co.'s and Hollingsworth & Vose's Br. at 17, Appellee Crouse-Hinds Second Am. Br. at 23, Appellant Gen. Elec. Co.'s Br. at 24-25. A close reading of Ott, however, confirms that this is not the case. While Ott initially noted the potential class division the plaintiffs now propose, it did not address such classification but redefined the distinction as "between asbestos victims and other victims under the product liability act." 785 N.E.2d at 1077. Indeed, Ott's conclusion that "the classification . . . works in favor of asbestos plaintiffs" can only be true of Ott's comparison between asbestos plaintiffs and other product liability plaintiffs, and not the classes proposed by the plaintiffs here. Id.

determined, in <u>Ott</u>. We consider it now because "[i]t is the claim . . . that defines the class" in an Article 1, Section 23 challenge. <u>Humphreys v. Clinic for Women, Inc.</u>, 796 N.E.2d 247, 254 (Ind. 2003) (quoting <u>McIntosh v. Melroe Co.</u>, 729 N.E.2d 972, 981 (Ind. 2000)); *accord* <u>Ott</u>, 785 N.E.2d at 1077 (identifying the Article 1, Section 23 classes based on the "constitutional *claim here*, reduced to its essentials" (emphasis added)). In analyzing a Section 23 challenge, it is the disparate classification alleged by the challenger, not other classifications, that warrants review. This is true as long as the alleged classes have a sufficient basis in the challenged legislation. <u>Sanquenetti v. State</u>, 727 N.E.2d 437, 442 (Ind. 2000) ("Contrary to the defendant's assertion that the statute establishes a 'legislative distinction between accessories and principals,' . . . the accomplice liability statute neither establishes separate classes nor accords disparate treatment to Indiana citizens or classes of citizens. Rather, the effect of the statute is just the opposite."). *See also* <u>Paul Stieler Enterprises, Inc. v. City of Evansville</u>, 2 N.E.3d 1269, 1273 (Ind. 2014) ("Under the facts of this case, both the language of the enactment and the parties identify essentially the same disparately treated classifications."). The classifications identified by the plaintiffs have such a legislative basis. Section 2 is titled "Asbestos-related actions" and governs those actions brought by asbestos victims. Because it "applies only to product liability actions against . . . persons who mined and sold commercial asbestos" the legislation is prescribing disparate treatment for asbestos victims injured by defendants who both mined and sold raw asbestos as compared to asbestos victims injured by other defendants. This statutory classification is the very one alleged by the plaintiffs here.

In <u>Collins v. Day</u>, this Court articulated the standard for determining whether a statute complies with Indiana's Equal Privileges and Immunities Clause:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

644 N.E.2d 72, 80 (Ind. 1994). "Compliance with both elements is required to satisfy the constitutional requirement." <u>Paul Stieler</u>, 2 N.E.3d at 1273.

Section 2 creates disparate treatment for the classes at issue here. Those asbestos victims who are injured by defendants who did not both mine and sell raw asbestos must sue those

6

defendants under Section 1, where they may be barred by the statute of repose. The asbestos victims who are injured by defendants who did both mine and sell raw asbestos, however, may sue those defendants under Section 2, where no statute of repose applies. Because there is disparate treatment, Collins requires first that any disparate impact "be reasonably related to inherent characteristics which distinguish the unequally treated classes," and second, that preferential treatment "be uniformly applicable and equally available to all persons similarly situated." 644 N.E.2d at 80. Section 2 does not satisfy this burden.

Under the first element, "Collins requires that . . . the disparate treatment must be reasonably related to the inherent differences that distinguish the unequally-treated classes." Paul Stieler, 2 N.E.3d at 1275. In this case, no such characteristic exists. The disparately treated classes are identically comprised of asbestos victims, and Section 2 does not differentiate between them based on any single characteristic of theirs–inherent or otherwise. Whether asbestos victims are seeking relief from defendants who mined and sold raw asbestos or from defendants who provided products containing asbestos does not constitute an inherent distinguishing difference between the asbestos victims. Under both Collins and Paul Stieler, because the disparate treatment is not reasonably related to an inherent difference of the unequally treated classes, the statute violates Article 1, Section 23.

Furthermore, under the second element of the Collins analysis,[9] any "preferential treatment must be uniformly applicable and equally available to all persons similarly situated." Collins, 644 N.E.2d at 80. Here, the two classes of asbestos victims are similarly situated (both are victims of asbestos illness or disease), yet only one of them (the class seeking damages from defendants who both mined and sold raw asbestos) is completely excepted from the statute of repose. Virtually all class members suffer from asbestos-caused diseases with latency periods of more than ten years. And, all class members were exposed to products containing asbestos. As plaintiffs Larry and Loa Myers point out:

> [A] Jane Doe [who] was exposed to asbestos from a product manufactured by a
> company which also happened to mine asbestos . . . . could . . . bring and maintain
> [a] claim[ ] against the wrongful part[y] under Indiana Law. It is only because

---

[9] We choose to address the second factor of the Collins analysis also, while recognizing that "the failure to satisfy the first prong obviates the need to discuss the second prong." Paul Stieler, 2 N.E.3d at 1278.

Larry Myers happens to have been injured by a product manufactured and sold by a particular sort of company (non-miners) that his claims are subject to a 10 year repose period.

Appellants Myers' Reply Br. at 9-10. And *amicus* Indiana Trial Lawyers Association adds: "Both classes of asbestos victims are victims of similar injuries, and it is happenstance that some victims trace their injury to a tortfeasor that mined and sold asbestos while other victims trace their injury to a tortfeasor that sold asbestos-containing products." *Amicus Curiae* Ind. Trial Lawyers Ass'n's Br. at 12. Thus Section 2 "creates a preference, and establishes an inequality among a class of citizens all of whom are equally meritorious," and therefore violates the second Collins factor. Collins, 644 N.E.2d at 79 (quoting Dixon v. Poe, 65 N.E. 518, 519, 159 Ind. 492, 497 (1902)).

The unequal treatment under Section 2 separately offends both the first and second elements of the Collins analysis, violating the Equal Privileges and Immunities Clause of Article 1, Section 23 of the Indiana Constitution[10] on two separate and independent bases.

In crafting Section 2, the General Assembly expressly included a non-severability clause, overriding Indiana Code section 1-1-1-8,[11] which would otherwise apply when part of a statute is unconstitutional. The relevant Section 2 clause reads that "[f]or the purposes of IC 1-1-1-8, if any part of this section is held invalid, the entire section is void." Ind. Code § 34-20-3-2(e). Because the plaintiff has established that Section 2, as construed by Ott, creates two disparately treated classifications in violation of the Indiana Constitution's Equal Privileges and Immunities Clause, we must invalidate all of Section 2.

Because Section 2 no longer governs the plaintiffs in this case, their claims now all fall

---

[10] The defendants collectively urge the importance of *stare decisis* and the impropriety of overruling Ott. While this present case is factually similar to Ott, the Article 1 Section 23 claim is different in that it raises a new set of classes and requires a new Collins v. Day analysis. All statutes, of course, are open to new constitutional challenges, even if they have previously been upheld against a different constitutional challenge.

[11] Indiana Code Section 1-1-1-8 declares a general rule that where any provision in a statute is held to be invalid, such invalidity "does not affect other provisions that can be given effect without the invalid provision or application." Ind. Code § 1-1-1-8(a). This rule of general severability, however, does not apply "in the case of a statute containing a nonseverability provision." Ind. Code § 1-1-1-8(b).

under the statute of repose provision in Section 1.  This Court has addressed the statutory interpretation of Section 1's statute of repose in two relevant cases: Ott and Covalt v. Carey Canada, Inc..  Ott, 785 N.E.2d at 1077-78; Covalt, 543 N.E.2d 382 (Ind. 1989).

In Covalt, this Court interpreted Section 1 in response to a certified question from the United States Seventh Circuit Court of Appeals.  543 N.E.2d at 383.[12]  We held there that "a plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that the discovery was made more than ten years after the last exposure to the product that caused the disease."  *Id.* at 384.  This holding was limited to cases, such as the ones here, "where an injury to a plaintiff is caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance."  *Id.*  As we explicitly held in Covalt, "our statute of repose [is] inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body."  *Id.* at 385.

Covalt interpreted Section 1 standing alone, because Section 2 had not yet taken effect, but Ott interpreted Section 1 in light of Section 2.  As Ott emphasized, "Covalt was decided under prior law."  785 N.E.2d at 1077.  Ott's partial overruling of Covalt was thus predicated on the intervening enactment and effective date of Section 2.  *Id.* (noting that "[t]he adoption of Section 2 renders [Covalt's] analysis obsolete.").  But today, because we find that Section 2 is void due to its partial unconstitutionality, Covalt is restored as this Court's controlling precedent.  As a result, the Product Liability Act statute of repose does not apply to cases involving protracted exposure to an inherently dangerous foreign substance, in accordance with Covalt.

The relevant facts in these three appeals, as alleged by the plaintiffs, fall within our holding in Covalt.  Raymond Geyman had worked for an electric utility company as a powerhouse worker, laborer, and welder from 1955 to 1979, allegedly working with and around asbestos-containing components.  He retired in 1979, was diagnosed with mesothelioma in March 2007, and died one year later. The Geymans filed their initial complaint in July 2007 and

---

[12] The question the Seventh Circuit certified was: "Whether a plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that the discovery was made more than ten years after the last exposure to the product that caused the disease."  Covalt, 543 N.E.2d at 384.

Mary Geyman now continues the litigation for herself and Raymond Geyman's estate. Plaintiff Larry Myers worked as an electrician for forty years, from 1959 to 1999, and was exposed to asbestos fibers used, installed, or otherwise disturbed when he did his work. He was diagnosed with malignant pleural mesothelioma in March 2014 and filed his action the following month. In its order denying summary judgment in General Electric v. Geyman, the trial court explained:

> It takes many decades for a sufficient number of genetic mutations to occur in a mesothelial cell because of the body's defense mechanisms that seek out and destroy defective cells (Ex. M2, Report of Dr. Arnold Brody, Ph.D., p.356.) . . . .
> There are no visible signs or symptoms that would alert a person to the fact that they are on the path to an asbestos related disease. Mesothelioma is a life threatening disease for which there is no cure.
> It has been stated numerous times in prior testimony and medical journals, that it takes about 20 years for a person to be ill enough to be diagnosed with an asbestos related disease, like asbestosis, and as many as 50 years after exposure for mesothelioma to be diagnosed.

Appellant General Electric Company's App'x at 67.

As in Covalt, the plaintiffs here allege injury caused by a disease that may have been "contracted as a result of protracted exposure to a foreign substance." 543 N.E.2d at 384. Thus, as we held in Covalt, the Indiana Product Liability Act's statute of repose provision does not apply to bar these plaintiffs' claims for asbestos injury and illness. *Id.* at 385. We affirm the denial of the summary judgment motions in General Electric Co. and Owens-Illinois, Inc. asserting the Product Liability Act statute of repose, and we reverse the summary judgment in Crouse-Hinds. Each of these cases are remanded to the trial court for further proceedings consistent with this opinion.

While we decline to reconsider our decision in AlliedSignal v. Ott, we find that Section 2 of the Product Liability Act violates the Indiana Constitution. Applying this Court's precedent in Covalt v. Carey Canada, Inc., we uphold our prior decision that the Indiana Product Liability Act's statute of repose does not apply to cases such as these where the plaintiffs have had protracted exposure to inherently dangerous foreign substances. We affirm the trial courts' denial of summary judgment in General Electric Co. and Owens-Illinois, Inc., and we reverse the trial court's grant of summary judgment in Crouse Hinds. We remand for further proceedings in accordance with this opinion.

10

Rucker and David, JJ., concur.

Rush, C.J., dissents with separate opinion.

Massa, J., dissents with separate opinion.

**Rush, Chief Justice, dissenting.**

My disagreement with the majority opinion rests entirely on stare decisis. Had I been on this Court in 2003, I may well have joined the <u>Ott</u> dissent, at least in its statutory analysis. We strictly construe statutes that limit a claimant's right to bring suit, <u>see, e.g.</u>, <u>Schoettmer v. Wright</u>, 992 N.E.2d 702, 706 (Ind. 2013)—so that when several interpretations are reasonable, we adopt the narrowest. And not only was the <u>Ott</u> dissent's narrow reading of Section 2 reasonable, it would also have mooted the constitutional questions, consistent with our preference to avoid deciding constitutional issues when other grounds would suffice. <u>E.g.</u>, <u>Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n</u>, 695 N.E.2d 99, 106–07 (Ind. 1998).

But we are not writing on a clean slate. The plaintiffs' constitutional argument here is not "new." Precisely the same view failed to garner a majority in <u>Ott</u>, despite being ably advanced in the dissent. <u>AlliedSignal, Inc. v. Ott</u>, 785 N.E.2d 1068, 1083 (Ind. 2003) ("There are no inherent characteristics that distinguish workers with asbestos-related diseases caused by exposure to raw asbestos from those with the same diseases brought about by exposure to manufactured products containing asbestos. Thus the unequal treatment accorded to each class cannot be reasonably related to any inherent differences.") (Dickson, J., dissenting). Thirteen years is hardly an eon in the realm of constitutional law, but it is long enough to generate reliance. Moreover, the General Assembly could have abrogated <u>Ott</u> with the stroke of a pen amending the statute, but rather left it intact—signifying the legislature's "acquiescence and agreement with the judicial interpretation." <u>See</u> <u>Fraley v. Minger</u>, 829 N.E.2d 476, 492 (Ind. 2005). Despite my own ambivalence about <u>Ott</u>, I cannot say it is so clearly wrong or unjust to warrant upending an issue we have already settled—when nothing has changed since 2003 but a third vote for the opposing view.

In an era of increasingly polarized and hostile public discourse, I pause to say what would have gone without saying a generation ago. Today's decision does nothing to change my deep respect for my colleagues, or my unwavering confidence in this Court as an institution. Reasonable people can (and today, do) disagree about each of the issues in this case, including the force of stare decisis. Still, I fear the Court's change of heart sets into motion a pendulum

that will swing long into the future—not because I expect we will *actually* reverse other close or controversial decisions, but because that is the inevitable *perception*.

As the Chief Justice and this Court's newest member, I am particularly conscious of our changing composition, both in the recent past and in the near future. And in turn, I am particularly aware of what our actions imply when our narrowly divided Court reverses itself on an issue that, barely a decade ago, narrowly divided us in the opposite direction.

Judicial authority is a fragile thing. The executive branch has the power of police; the General Assembly has the power of the purse strings; but our Court has only the power of persuasion. Our efficacy therefore depends wholly on the rule of law—which is just another name for the respect we earn by showing stability and consistency in our judgments and integrity in our processes. Today's reversal is not a catastrophe. But instead of building a little bit on the rule of law, this decision chips a little bit away.

I therefore respectfully dissent.

**Massa, J., dissenting.**

I agree with much of Chief Justice Rush's dissent, including, perhaps even, her observation that today's decision is not a catastrophe. Time will tell. But I do believe it has the potential to more than chip away at the rule of law and inflict more serious damage on our Court and state, so I write separately about these concerns.

The ruling of the Court will be seen in some quarters as righting a historic injustice. Maybe so, but I must respectfully disagree. Twenty-seven years after the unconstitutionality of our statute of repose was first suggested in a dissenting opinion,[1] it is now finally the law of Indiana in asbestos cases. This unfortunate and disappointing reversal of precedent is neither warranted nor wise, in my view. My strong objections are procedural, substantive, and prudential in nature, and I will address each in order.

First, it pains me, but I find it necessary to point out that the case began with an unusual act of defiance in the trial court, when the judge (shortly before retiring) refused to apply our clear and unmistakable precedent and grant summary judgment to the defendants.[2] The Court of Appeals would have been duty-bound to apply our law and reverse, with the question then

---

[1] Covalt v. Carey Canada, Inc., 543 N.E.2d 382, 389–90 (Ind. 1989) (Dickson, J., dissenting).

[2] Notably, in his 12- and 26-page written decisions denying the defendants' motions for summary judgment, Judge Sosin doesn't posit any new theory of class distinction, including the allegedly "new" claim upon which today's majority bases its decision. Owens-Illinois App. at 46–58; General Electric App. at 48–73. Instead, he merely opines that the dissent had the better of it over a decade ago: "This court finds the reasoning and holding of the dissenting opinion in Ott [] persuasive and consistent with current legal reasoning." Owens-Illinois App. at 53; General Electric App. at 66. These decisions were in direct contradiction with a trial judge's obligations as an officer of the court, for the *very first rule* in our judicial canons mandates that "a judge shall comply with the law," and further defines the term "law" to include "decisional law." See Ind. Code of Judicial Conduct Rule 1.1. Our decision in Ott could not have been any clearer, the trial court was required to apply it accordingly, and refused. After today, what is to keep another trial judge from deciding he prefers *this* dissent?

coming to us on transfer in due course. But we instead accelerated the process[3] and rewarded this rogue order by reaching down and taking the case away from the appellate court. We now compound the error, in my judgment, by affirming that order in a repudiation of settled law that offends stare decisis and may invite re-examination of other precedents of this Court as its membership evolves.

Substantively, the statute of repose reflects a legislative decision to limit liability for a product's defects where that product has existed in commerce for a decade.[4] Dague v. Piper Aircraft Corp., 275 Ind. 520, 525, 418 N.E.2d 207, 210 (1981). The apparent rationale is that after use for such a long duration, it may be unfair to hold the manufacturer responsible for product failure and the evidence may be unreliable or unavailable. McIntosh, 729 N.E.2d at 980. Moreover, as a matter of public policy, manufacturers should be able "to plan their affairs without the potential for unknown liability." Id.

The majority finds the statute of repose here to be unconstitutional as applied to asbestos plaintiffs, despite this Court's ruling to the contrary thirteen years ago. AlliedSignal, Inc. v. Ott, 785 N.E.2d 1068, 1076–77 (Ind. 2003). Today's holding is clever. It attempts to avoid the

---

[3] Although we have such discretion, we did not have to exercise it in this case. See Ind. Appellate Rule 56(A) ("In rare cases, the Supreme Court may, upon verified motion of a party, accept jurisdiction over an appeal that would otherwise be within the jurisdiction of the Court of Appeals upon a showing that the appeal involves a substantial question of law of great public importance and that an emergency exists requiring a speedy determination.").

[4] By way of background, a statute of repose is conceptually distinct from a statute of limitations, although both are at play in Indiana's product liability law. See Ind. Code § 34-20-3-1(b) (2014). A statute of limitations is triggered by the accrual of an injury, whereas a statute of repose is triggered by the completion of some other act, here, the product's delivery to the initial user. The former can be avoided or tolled by a number of equitable factors, like the discovery rule, Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 842–43 (Ind. 1992); the latter, however, operates to prevent a cause of action—as to certain products—from arising in the first place. McIntosh v. Melroe Co., a Div. of Clark Equip. Co., 729 N.E.2d 972, 978 (Ind. 2000).

2

confines of stare decisis by discovering a "new" claim and theory, allegedly overlooked in Ott[5]; that is, a supposed prohibited "classification" of plaintiffs into those injured by miners and sellers of asbestos and those injured by products containing the substance. But there is no such classification at work in this case. Under the asbestos exception to the statute of repose, everyone injured by asbestos is in the same class: they can all—regardless of the circumstances of their exposure—sue the miners and sellers that placed the asbestos into commerce, free from the constraints of the ten-year statute of repose that prevails in all other products liability cases. Indeed, both sets of plaintiffs in the cases before us today did just that: the Myerses sued Union Carbide Corporation, alleging it "mined and sold commercial asbestos," R.J. Reynolds App. at 131; and the Geymans sued Asbestos Corporation, Ltd. and Bell Asbestos, Ltd., alleging each is a "raw asbestos fiber miner, seller and distributor." General Electric App. at 79. In other words, if we were to accept the two classes the majority suggests experience disparate treatment, these plaintiffs would fit squarely in both.

In truth, the General Assembly has not created separate classes of plaintiffs; it has, rather, limited the pool of potential defendants who can be sued beyond ten years.[6] And, doing so is well within its authority: "our legislature clearly has the power to abrogate or modify common

_____

[5] Slip. Op. at 8 n.10 ("While the present case is factually similar to Ott, the Article 1 Section 23 claim is different in that it raises a new set of classes and requires a new Collins v. Day analysis.").

[6] Although we cannot turn to legislative history for insight, we can quite clearly see lawmakers' rational decision to rein in asbestos claims through a dialogue of sorts with our Court. We began the conversation in 1989, finding raw asbestos was not a product that could be made safer through industry development over time. Covalt, 543 N.E.2d at 385. So, we interpreted the statute of repose as being "inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body." Id. By reason of that ruling, for nearly a decade, no statute of repose limited asbestos litigation. In 1998, however, the legislature responded by reinstating statute of repose protection for product manufacturers but not for those who mined and sold commercial asbestos and who set aside funds for the payment of such claims. Ind. Code § 34-20-3-2; 1998 Ind. Acts 127–28. We interpreted the statute as such and upheld it in the face of constitutional challenges. Ott, 785 N.E.2d at 1073, 1076–77. As the majority notes, the legislature has had considerable time to alter that interpretation, and it has declined to do so. Slip Op. at 4.

3

law rights and remedies." Dague, 275 Ind. at 529, 418 N.E.2d at 213. It is the appropriate body to balance victims' interests in recovering damages with businesses' interests in being free from indefinite liability exposure. Scalf v. Berkel, Inc., 448 N.E.2d 1201, 1204–05 (Ind. Ct. App. 1983). Indeed, the legislature has exercised its discretion to restrict plaintiffs' remedies and defendants' corresponding responsibilities on other occasions. See, e.g., McIntosh, 729 N.E.2d at 973 (finding products liability statute of repose "is a permissible legislative decision to limit the liability of manufacturers of goods over ten years old"); VanDam Estate v. Mid-Am. Sound, 25 N.E.3d 165, 172 (Ind. Ct. App.) (finding damages cap "does not classify tort victims, but only occurrences, and the legislature may properly decide that occurrences that generate over five million dollars in liability place too great a burden on the treasury"), trans. denied, 34 N.E.3d 250 (Ind. 2015).

Most importantly, the argument relied upon today is *not* a new one. Quite the contrary, the Ott dissent explicitly made this argument, which did not carry the day:

> There are no inherent characteristics that distinguish workers with asbestos-related diseases caused by exposure to raw asbestos from those with the same diseases brought about by exposure to manufactured products containing asbestos. Thus the unequal treatment accorded to each class cannot be reasonably related to any inherent differences. With the majority's refusal to construe Section 2 to equally treat all persons with asbestos-related diseases, the product liability statute of repose clearly grants to persons whose diseases derive from raw asbestos substantial privileges and immunities that do not equally belong to identically situated persons whose diseases result from asbestos-containing products. The constitutional violation is apparent.

785 N.E.2d at 1083 (Dickson, J., dissenting).[7]

---

[7] Just a few years earlier, the same dissent made a strikingly similar argument against the general product liability statute of repose, also relying on the Equal Privileges and Immunities Clause:

The only thing that *is* new is the make-up of our Court, and that dissenting viewpoint garnering a third vote. And so, we are confronted with the very circumstance stare decisis exists to discourage. Marsillett v. State, 495 N.E.2d 699, 704 (Ind. 1986) ("Precedent operates as a maxim for judicial restraint to prevent the unjustified reversal of a series of decisions merely because the composition of the Court has changed.").[8] Of course, the majority insists stare decisis has not been offended, claiming it resolves the case on grounds not decided in Ott. But not only were those grounds raised in Ott, they were properly rejected as a matter of law. Through artful reasoning, the majority has engaged in stealth overruling, to the detriment of the public, confusing the law and eliminating transparency and predictability.[9]

Since Section 2's enactment 18 years ago, the law in Indiana has been clear and predictable for litigants and for those doing business in Indiana.[10] Parties have organized their

---

> The statute, on its face, distinguishes two classes of persons for unequal treatment: a user or consumer injured within ten years after the delivery of the product, and a user or consumer injured more than ten years after the delivery of the product. By artificially distinguishing as a separate class those citizens injured by defective products more than ten years old, and by forbidding them access to legal recourse for their injuries, this statute violates the Equal Privileges and Immunities Clause, Section 23 of the Bill of Rights of the Indiana Constitution.

McIntosh, 729 N.E.2d at 991 (Dickson, J., dissenting). But a majority of the Court rejected that argument, finding, "the distinction is the age of the product that allegedly injured the claimant. Contrary to the suggestion of the dissent, there is no statutory classification of claimants. *Anyone can present a claim and anyone can be barred by the statute, depending on what product is the source of the claim*." Id. at 981 (emphasis added).

[8] That's not to say there can *never* be grounds for parting with a settled rule. A change in membership simply is not one of them.

[9] See Barry Friedman, The Wages of Stealth Overruling (With Particular Attention to *Miranda v. Arizona*), 99 Geo. L.J. 1, 63 (2010).

[10] The value of certainty and the courts' role in furthering that endeavor should not be understated. "Indiana's judiciary is very important to commerce and the daily pursuits of most of our citizens. You simply cannot have a functioning free market economy without a fair and open forum with rules and

affairs in reliance on our settled law.[11]  Yet today we take a time machine back to 1989, to a case interpreting a statute before it was amended.  See Ott, 785 N.E.2d at 1077 ("Covalt was decided under prior law.").  It is the resuscitation of Covalt that I find particularly disturbing, and quite frankly, ironic, given the dissent's worthy criticism of the tortured statutory construction employed to resolve the case.  Covalt, 543 N.E.2d at 388 (Shepard, C.J., dissenting) (stating the majority is "rewriting a statute which is a model of legislative clarity"); id. at 389 (Dickson, J., dissenting) (finding the statute unambiguously applies and declaring "an appellate tribunal may not substitute its judgment for that of the legislature").  This cannot be good for a state that has taken well-deserved pride in its efficient and just litigation climate; our "courts are not a barrier to economic development."  Chief Justice Randall T. Shepard, Indiana State of the Judiciary Address:  On the Way to Something Better (Jan. 11, 2012).[12]  That reputation may be diminished by today's hard turn.

Out of deference to the reasoned policy determinations of our General Assembly, and more profoundly, to our Court's longstanding precedent interpreting those laws, I would affirm the trial court in Myers and reverse it in Geyman.  I therefore dissent.

---

predictable outcomes where private contracts are enforced and disputes settled."  Chief Justice Brent E. Dickson, Indiana State of the Judiciary Address (Jan. 15, 2014).

[11] Despite the majority's attempt to open the door for *all* asbestos claims, in reversing course here, it leaves those plaintiffs who happened to discover their injury under the state of the law of the last 18 years without the array of potential defendants once again available to plaintiffs after today.

[12] In a 2010 study on how businesses perceive the fairness and reasonableness of state tort liability systems, Indiana ranked fourth.  U.S. Chamber Institute for Legal Reform, State Liability Systems Survey (2010).

ATTORNEYS FOR THE PARTIES

ATTORNEYS FOR APPELLANTS
LARRY AND LOA MYERS
Todd C. Barnes
Sarah E. Broderick
Linda George
Kathleen A.M. Farinas
George & Farinas LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT
OWENS-ILLINOIS, INC.
Susan E. Mehringer
Dennis F. Cantrell
Keith D. Mundrick
Cantrell, Strenski, & Mehringer, LLP
Indianapolis, Indiana

Neil Lloyd
Shiff Hardin LLP
Chicago, Illinois

ATTORNEYS FOR APPELLANT
GENERAL ELECTRIC COMPANY
Christopher N. Wahl
David J. Saferight
Hill Fulwider PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
MARY GEYMAN
Linda George
Kathleen A. Farinas
Todd Barnes
Ashleigh Resetarits
Sarah Broderick
George & Farinas LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE CROUSE-HINDS
DIVISION OF COOPER INDUSTRIES
Edward W. Hearn
Susan K. Swing
Johnson & Bell Ltd.
Crown Point, Indiana

Michael D. Martinez
Douglas M. Sinars
Matushek, Nilles, & Sinars, LLC
Chicago, Illinois

ATTORNEYS FOR APPELLEES R.J. REYNOLDS
TOBACCO COMPANY AND HOLLINGSWORTH
& VOSE COMPANY
James E. Berger
Elizabeth Raines
Hughes, Hubbard, & Reed LLP
Kansas City, Missouri

Thomas J. Costakis
Catherine E. Sabatine
Krieg DeVault LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, INDIANA CHAMBER OF
COMMERCE, AND NATIONAL FEDERATION OF INDEPENDENT BUSINESS SMALL BUSINESS LEGAL
CENTER
Peter J. Rusthoven
Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

Mark D. Scudder
Barnes & Thornburg LLP
Fort Wayne, Indiana

COALITION FOR LITIGATION JUSTICE, INC.
John R. Maley
Barnes & Thornburg LLP
Indianapolis, Indiana

INDIANA LEGAL FOUNDATION
Dean T. Barnhard
T. Joseph Wendt
Barnes & Thornburg LLP
Indianapolis, Indiana

INDIANA TRIAL LAWYERS ASSOCIATION
Gabriel A. Hawkins
Cohen & Malad, LLP
Indianapolis, Indiana